No. 03-231

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 343

TREVOR VANNATTA,

        Petitioner and Respondent,

   v.

BARRIE L. BOULDS, f/k/a
BARRIE L. VANNATTA,

        Respondent and Appellant.

APPEAL FROM:    District Court of the Fifteenth Judicial District,
                In and For the County of Roosevelt, Cause No. DR 2002-29,
                Honorable David J. Cybulski, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Fred J. Hofman, Hofman Law Office, Wolf Point, Montana

           Jeff Nehring, Attorney at Law, Williston, North Dakota

      For Respondent:

           Janet Christoffersen, Crowley, Haughey, Hanson, Toole & Dietrich,
           P.L.L.P., Williston, North Dakota

                         Submitted on Briefs:  October 9, 2003

                                  Decided:  December 15, 2003

Filed:

                                  Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Barrie L. Boulds (Boulds) appeals the District Court's order amending a custody decree and naming Trevor Vannatta (Vannatta) as their minor child's primary residential caregiver. We reverse.

¶2 The issue on appeal is whether, under the Uniform Child Custody Jurisdiction and Enforcement Act and the Parental Kidnapping and Prevention Act, the Montana District Court lacked subject matter jurisdiction to modify the original custody decree from the State of North Dakota?

### Factual and Procedural Background

¶3 Boulds and Vannatta were married in May of 1997. Their one child (Sydney) was born in October of 1996 in North Dakota. Their marriage was dissolved in North Dakota in April of 2000. The County of Williams District Court in North Dakota entered a divorce judgment which granted Boulds residential custody of Sydney and reserved liberal visitation rights for Vannatta. Vannatta currently resides and works in North Dakota. He has remarried. Boulds moved to Montana in 2002 and was residing in Montana when this action commenced. During this same period, Sydney began her summer visitation with Vannatta in North Dakota. In August of 2002, Sydney went back to Montana with Boulds. Approximately one week later, because of scheduling conflicts Boulds was experiencing, Sydney moved back to North Dakota to live with Vannatta.

¶4 The current case arises because on December 16, 2002, Vannatta filed a petition in Roosevelt County, Montana, to modify the custody decree. Boulds had notified Vannatta

2

that she planned to resume her residential custody of Sydney, possibly in Montana. In January of 2003, Boulds moved to dismiss the action in the Montana court based on lack of jurisdiction. At the time this action began, Boulds was working in Montana and planned on attending college, either in Montana or North Dakota. Sydney has lived with both Boulds and Vannatta. When Vannatta filed the petition seeking custody, Sydney was living with him in North Dakota. Sydney was covered by Vannatta's health insurance. She also attended school, church, gymnastics, and Sunday school in North Dakota.

¶5 The Montana District Court considered the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) and the Parental Kidnapping and Prevention Act (PKPA). The court concluded, over Boulds's objection, that it had jurisdiction even though the original dissolution occurred in North Dakota because Boulds had been a Montana resident since April 2002 and Vannatta, the parent remaining in North Dakota, consented to the action in the Montana court and waived his protection under both acts. The court then granted Vannatta primary custody based on a substantial change in circumstances since the original custody order was entered, including the integration of Sydney into Vannatta's family with Boulds's consent, and because it was in Sydney's best interests. The court terminated Vannatta's obligation to make child support payments and ordered Boulds to reimburse Vannatta for past support payments beginning in August 2002. Boulds appeals the District Court's order modifying the North Dakota custody agreement.

## Discussion

¶6 Issue: Whether the Montana District Court lacked subject matter jurisdiction under the UCCJEA and the PKPA to modify the original custody decree from the State of North Dakota?

¶7 We review a district court's findings of fact to determine if the findings are clearly erroneous. *In re Marriage of Brownwell* (1993), 263 Mont. 78, 81, 865 P.2d 307, 309. We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *In re Marriage of Kovash* (1995), 270 Mont. 517, 521, 893 P.2d 860, 863.

¶8 Montana adopted a form of the Uniform Child Custody Jurisdiction Act (UCCJA) to address interstate custody disputes. *In re Marriage of Shupe* (1996), 276 Mont. 409, 413, 916 P.2d 744, 746. Because the UCCJA inadequately remedied the problems of forum-shopping and child snatching, Congress enacted the PKPA in 1980 to establish national standards for state courts to determine whether they have jurisdiction in child custody proceedings and to determine what effect to give custody determinations from other states. *Shupe*, 276 Mont. at 413, 916 P.2d at 747. "Two underlying purposes of the PKPA are to discourage continuing interstate controversies over child custody and to facilitate the enforcement of custody determinations of sister states." *Shupe*, 276 Mont. at 414, 916 P.2d at 747.

¶9 Full faith and credit ordinarily must be given to child custody determinations made by another state's court if that court appropriately exercised jurisdiction under PKPA standards. *Shupe*, 276 Mont. at 414, 916 P.2d at 747; 28 U.S.C. § 1738A(a). The United

4

States Supreme Court has stated that "[o]nce a State exercises jurisdiction consistently with the provisions of the [Parental Kidnapping Prevention] Act, no other State may exercise concurrent jurisdiction over the custody dispute, § 1738A(g), even if it would have been empowered to take jurisdiction in the first instance, and all States must accord full faith and credit to the first State's ensuing custody decree." *Thompson v. Thompson* (1988), 484 U.S. 174, 177, 108 S.Ct. 513, 515, 98 L.Ed.2d 512, 518-19. We have similarly stated that the PKPA normally requires courts to decline to modify child custody determinations issued by another state. *Shupe*, 276 Mont. at 415, 916 P.2d at 747.

¶10 In 1999, the Montana Legislature adopted the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) which repealed and replaced the UCCJA provisions in Montana law. *Stoneman v. Drollinger*, 2003 MT 25, ¶ 14, 314 Mont. 139, ¶ 14, 64 P.3d 997, ¶ 14. The purpose of the UCCJEA, which was approved by the National Conference of Commissioners on Uniform State Laws in 1997, was "[t]o harmonize state child custody jurisdictional provisions with the PKPA and to eliminate inconsistent state court interpretations of jurisdictional issues . . . ." *Stoneman*, ¶ 14.

¶11 Pursuant to the UCCJEA, § 40-7-203, MCA, provides as follows:

> a court of this state may not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under 40-7-201(1)(a) or (1)(b) and:
> (1) the court of the other state determines it no longer has exclusive, continuing jurisdiction under 40-7-202 or that a court of this state would be a more convenient forum under 40-7-108; or
> (2) a court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

The state seeking to modify the original state's custody decree is not authorized to determine that the original state has lost its jurisdiction unless the child, the child's parents, and any person acting as a parent no longer reside in the original decree state. Commissioners' Note, § 40-7-203, MCA.

¶12    In the present case, it is undisputed that North Dakota properly exercised jurisdiction when the original custody decree was issued. Therefore, our analysis will focus on whether Montana, subsequent to the original decree, obtained jurisdiction. Boulds and Vannatta were divorced in North Dakota and the County of Williams District Court properly exercised jurisdiction and entered a divorce decree and custody decree. Pursuant to the custody decree, Boulds was granted primary custody of Sydney.

¶13    Until otherwise determined, North Dakota has continuing jurisdiction and the Montana court must give full faith and credit to North Dakota's decree. *Thompson*, 484 U.S. at 177, 108 S.Ct. at 515, 98 L.Ed.2d at 518. The Montana court may only exercise jurisdiction under certain circumstances and otherwise must decline to modify the North Dakota decree. *Shupe*, 276 Mont. at 415, 916 P.2d at 747. First, Montana must have jurisdiction to make such a child custody determination. Section 40-7-203, MCA. Second, the North Dakota court must determine it no longer has exclusive, continuing jurisdiction or that a Montana court would be a more convenient forum, pursuant to § 40-7-108, MCA. Section 40-7-203(1), MCA. In the alternative, the second requirement may be satisfied if either the Montana court or the North Dakota court determine that Sydney, her parents, *and*

6

any person acting as her parent no longer reside in North Dakota. Section 40-7-203(2), MCA. We will address the second requirement first because it is dispositive of this case.

¶14 The record does not reflect that the County of Williams District Court in North Dakota determined that it no longer has exclusive, continuing jurisdiction. The record also does not reflect that the North Dakota court determined that a Montana court would be a more convenient forum. In the absence of such determinations by the North Dakota court, the Montana court did not gain jurisdiction to modify the North Dakota decree. Section 40-7-203(1), MCA.

¶15 North Dakota could also lose jurisdiction if neither Sydney, her parents, nor any person acting as a parent presently reside in North Dakota. Section 40-7-203(2), MCA. Here, even though Boulds lives in Montana, North Dakota retains jurisdiction because Vannatta is a North Dakota resident. Section 40-7-203(2), MCA.

¶16 Vannatta is still a resident of North Dakota where the custody decree was entered. Sydney is also a North Dakota resident, attending school, church, and participating in recreational activities like gymnastics. Boulds's move to Montana does not defeat North Dakota jurisdiction. Section 40-7-203(2), MCA. The fact that Vannatta chose to file his petition in Montana is insufficient to confer jurisdiction in the Montana District Court to modify a custody determination made by a court of another state. Jurisdiction cannot be conferred by consent of the parties. *In re Marriage of Miller* (1993), 259 Mont. 424, 427, 856 P.2d 1378, 1380. Jurisdiction is defined by the law; in this instance, by reference to the provisions of § 40-7-203, MCA. Section 40-7-203, MCA, only grants a Montana court

7

jurisdiction to modify an out-of-state custody decree if: (1) the other state determines it no longer has exclusive, continuing jurisdiction or that a Montana court would be a more convenient forum; or (2) a court of this state or a court of the other state determines none of the interested parties presently reside in the other state. Since neither of these circumstances pertain, the Montana court had no jurisdiction to entertain the petition to modify.

¶17 Accordingly, we conclude that the District Court's application of the law was incorrect. We reverse.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER