No. 04-128

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 222

IN RE THE PARENTING OF A.B.A.M., a minor child,

C.M.,

  Petitioner and Appellant,

  v.

B.A.,

  Respondent and Respondent.

APPEAL FROM:     District Court of the Fourth Judicial District,
                 In and for the County of Missoula, Cause No. DR 99-573
                 The Honorable John W. Larson, Judge presiding.


COUNSEL OF RECORD:

         For Appellant:

         James D. Moore, Attorney at Law, Kalispell, Montana

         For Respondent:

         Larry E. Riley, Garlington, Lohn & Robinson, Missoula, Montana; Kelton
         D. Olney, Alterowitz Law Offices, Missoula, Montana

Submitted on Briefs:  June 15, 2004

Decided: August 18, 2004

Filed:

_____
                      Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Petitioner C.M. appeals from an Order of the Fourth Judicial District Court, Missoula County, in which the District Court refused to relinquish jurisdiction over custody and parenting issues relating to A.B.A.M., the daughter of C.M. and B.A., to the Court of Common Pleas of the Seventeenth Judicial District Court, Snyder County Branch, Pennsylvania. We reverse.

## ISSUE

¶2 Did the Pennsylvania court appropriately assume jurisdiction over the custody and parenting issues related to A.B.A.M., and was it proper for the Montana District Court to refuse to relinquish jurisdiction once the Pennsylvania court had assumed jurisdiction over the matter?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 A.B.A.M. was born in Missoula, Montana, in February 1999. At the time of her birth, her mother C.M. and her father B.A. were both students at the University of Montana. C.M. and B.A. had lived together for about six months, but separated shortly after A.B.A.M.'s birth. On October 18, 1999, C.M. and B.A. filed a Petition For Parenting Plan in the Fourth Judicial District Court in Missoula. The District Court approved the Parenting Plan on March 31, 2000.

¶4 Later that year, C.M. relocated to her grandparents' residence near Philadelphia, Pennsylvania. She and B.A. negotiated an Amended Interim Parenting Plan which was approved by the Montana District Court on December 14, 2000. Under that Amended Plan,

2

C.M. and B.A. agreed to share joint custody of A.B.A.M. with C.M. as the residential parent. At the time, B.A. was attending college. This Amended Plan was to remain in effect only until his anticipated graduation in June 2003. B.A. graduated sooner than expected, and he and C.M. began to negotiate a new Parenting Plan in December 2002. With the assistance of a mediator, C.M. and B.A. met for a settlement conference in February 2003, and reached an agreement for a new Parenting Plan (the Parenting Plan), which was approved by the Montana District Court on April 18, 2003.

¶5 Shortly after the settlement conference, B.A. sent C.M. a letter informing her that he planned to move to Seattle, Washington. B.A. provided C.M. with a temporary address and telephone number. In May 2003, A.B.A.M. received a letter from B.A., sent from Seattle, in which he included a message to C.M. stating that the Seattle address on the envelope was his current mailing address.

¶6 According to the terms of the Parenting Plan, A.B.A.M. would visit B.A. and her paternal grandparents in Montana in August 2003. In July 2003, after a conversation with A.B.A.M. and a medical exam, C.M. came to believe that A.B.A.M. had been abused during a previous overnight visit with B.A. C.M. accordingly filed a Motion to Modify Custody and Emergency Request for Expedited Ex Parte Relief in the Court of Common Pleas of the Seventeenth Judicial District of Pennsylvania, Snyder County Branch. She requested that B.A.'s visitation with A.B.A.M. be suspended pending a psychological evaluation and the implementation of measures to ensure A.B.A.M.'s safety.

3

¶7 On August 8, 2003, the Pennsylvania Court issued an Order suspending the upcoming scheduled visitation between A.B.A.M., and B.A. and his parents. The Pennsylvania Court further scheduled a hearing for September 4, 2003. On August 17, 2003, B.A. returned to Missoula from Seattle. Two days later, he filed a Motion to declare C.M. in contempt of court, and Motion for a Determination of Jurisdiction, in the Fourth Judicial District Court in Missoula.

¶8 The Pennsylvania Court conducted its hearing on September 4, 2003, as scheduled. B.A. did not appear in person or through counsel. C.M. argued to the Pennsylvania Court that Montana no longer had jurisdiction over the case because B.A. had changed his residency to Washington. She presented evidence that he had written her a letter saying he was moving to Seattle and later wrote a letter to A.B.A.M. from Seattle; that he had a Seattle telephone number, transferred from his Montana National Guard unit to a unit in the Seattle area; transferred the child support enforcement order to Washington; and changed his automobile registration and driver's license to Washington. She further testified that she had found an advertisement that B.A. placed on the Internet looking for shared housing in Seattle to begin in September 2003, after he returned from a "vacation." The dates in the advertisement coincided with the dates of A.B.A.M.'s planned visit to Montana.

¶9 The Montana District Court held a hearing on B.A.'s Motion to declare C.M. in Contempt of Court on September 11, 2003. B.A., B.A.'s counsel, and counsel for C.M. appeared. B.A. argued that the Montana District Court should retain jurisdiction and requested that it order C.M. to bring A.B.A.M. to Montana for visitation. B.A. testified that

4

he had moved to Washington "temporarily" following the February 2003 settlement conference, and that while there he made his living delivering pizza. He testified that he licensed and registered his car in Washington, obtained a Washington driver's license, and that he was living in Seattle as of May 2003 when he wrote a letter to A.B.A.M. He further testified that he had posted an ad on August 7, 2003, in Seattle, which read, in part, "My cat and I are looking for a room FAST. . . . I need the room by Sept. 1, but I am leaving on vacation . . . and won't be back until the end of the month." He testified that at the time he placed the ad on August 7, he did not intend to leave Seattle, but planned to continue residing there after A.B.A.M.'s August visitation in Missoula. B.A. admitted that it was not until after the August visitation failed to occur that he decided to move back to Montana.

¶10 B.A. further testified that he was currently living in Missoula and had been employed by a temporary agency for about a month, but expected to be permanently hired into the position he held. He stated that he was still using his Washington cellular phone number.

¶11 On December 17, 2003, the Montana District Court and the Pennsylvania Court of Common Pleas held a telephonic hearing concerning the issue of which state properly had jurisdiction over the case. Although the Pennsylvania Court concluded that it had jurisdiction over the case in its entirety, the Montana District Court disagreed and issued an Order in which it agreed to cede temporary emergency jurisdiction to Pennsylvania, but refused to relinquish jurisdiction of the case. From the Montana District Court's refusal to relinquish jurisdiction, C.M. timely appeals.

**STANDARD OF REVIEW**

5

¶12 We review a district court's findings of fact to determine if the findings are clearly erroneous. *Vannatta v. Boulds*, 2003 MT 343, ¶ 7, 318 Mont. 472, ¶ 7, 81 P.3d 480, ¶ 7. We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *Vannatta*, ¶ 7.

## DISCUSSION

¶13 Did the Pennsylvania court appropriately assume jurisdiction over the custody and parenting issues related to A.B.A.M., and was it proper for the Montana District Court to refuse to relinquish jurisdiction once the Pennsylvania court had assumed jurisdiction over the matter?

¶14 The Parental Kidnaping Prevention Act (PKPA), 28 U.S.C. § 1738A, and the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), §§ 40-7-101, *et. seq.*, MCA (1999), govern our resolution of this case. C.M. argues that, while the Montana District Court correctly held that jurisdictional issues in this matter had to be determined under Montana law, it erred when it found that B.A. had not become a resident of the State of Washington prior to the commencement of the proceedings. C.M. argues that, under the PKPA and UCCJEA (as codified in Montana), the Pennsylvania Court acted within its proper authority to assume jurisdiction, and that the Montana District Court has improperly refused to relinquish jurisdiction to Pennsylvania.

¶15 B.A. responds that "the necessary events to shift jurisdiction from Montana to another state have not occurred." He argues that the most significant factor in determining the jurisdictional issue is the fact that he remains a Montana resident, and that he never had the

6

requisite intent to change his residency to Washington. Thus, he argues, since A.B.A.M. has a parent currently residing in Montana, and since Montana has been the jurisdiction in which child custody determinations involving A.B.A.M. have been made since her birth, there is no basis upon which Montana should relinquish jurisdiction.

¶16    Relying on § 40-7-202(1)(b), MCA, a provision of the UCCJEA as adopted in Montana, B.A. asserts that a Montana court has exclusive, continuing jurisdiction over a child custody determination until "a court of this state or a court of another state determines that neither the child, a parent, nor any person acting as a parent presently resides in this state." Thus, he concludes, since he remains a Montana resident, it would be improper for Pennsylvania to assume jurisdiction over the matter. B.A. further argues that C.M. should not have brought the jurisdictional issue before the Pennsylvania Court, but rather should have sought a determination of proper jurisdiction in a Montana District Court, noting that under § 40-7-107, MCA, a court may not exercise its jurisdiction if at the time of commencement of the proceeding, a custody proceeding had been previously commenced in a court of another state having jurisdiction.

¶17    C.M. replies that the issue of whether the Pennsylvania Court properly assumed jurisdiction of this matter is dispositive. C.M. argues that Pennsylvania acted in accordance with the UCCJEA, and specifically § 40-7-202(1)(b), MCA, when it – as a "court of another state" – determined that neither the child nor either of the child's parents presently resided in Montana. She further argues that B.A.'s reliance on § 40-7-107, MCA, is misplaced, because the proceeding commenced in the Montana District Court on August 19, 2003, was

7

commenced after the Pennsylvania Court had already assumed jurisdiction, and in the absence of a termination of the proceedings in Pennsylvania. Thus, C.M. concludes, the Montana District Court erred when it then refused to relinquish its jurisdiction in the matter, since a court of another state had already made a determination, in accordance with Montana law, that B.A. did not reside in Montana.

¶18 The record reflects that proceedings commenced in Pennsylvania on August 8, 2003. It is undisputed that on that date, B.A. was to be found in Seattle, Washington, with a Washington driver's license and vehicle registration, and a Seattle mailing address and phone number. In addition, he had transferred his child support payments and his National Guard membership to the Seattle area, and had placed an advertisement the day before the Pennsylvania hearing seeking housing in Seattle. B.A. returned to Montana nine days later, on August 17, 2003. When the Pennsylvania Court conducted further hearings on this matter on September 4, 2003, B.A. did not appear and did not contest the Pennsylvania Court's conclusion that he had given up his Montana residency. B.A. has not appealed the Pennsylvania Court's decision, but rather has chosen to attack it collaterally here.

¶19 In its Order of December 18, 2003, the Montana District Court found that B.A. moved back to Montana on August 17, 2003, and that B.A. had not established a new residence in Washington. In reaching its decision, the Montana District Court relied upon § 1-1-215(6), MCA, which mandates that one may change residency "only by the union of act and intent." Thus, although it agreed to cede temporary emergency jurisdiction to Pennsylvania, the Montana District Court refused to relinquish jurisdiction of the case.

8

¶20    The difficulty with the December 2003 Order from the Montana District Court lies in the fact that the District Court's findings contradict findings previously made by the Pennsylvania Court pursuant to the UCCJEA as codified in Montana, and the PKPA.  The PKPA established national standards under which jurisdictions could determine whether they had jurisdiction and what effect to give the decisions by courts of other jurisdictions.  *Erler v. Erler*, 261 Mont. 65, 69, 862 P.2d 12, 15.  As we explained in *In re Marriage of Shupe*, 276 Mont. 409, 415, 916 P.2d 744, 747,

> The PKPA generally requires the courts of a state to enforce – and decline to modify – child custody determinations made by the courts of other states.  *28 U.S.C. § 1738A(a).*  A specific exception to the general rule authorizes a court to modify a child custody determination made by a court in another state when two requirements are satisfied:  (1) the court has jurisdiction to make a child custody determination; and (2) the court of the other state no longer has jurisdiction or has declined to exercise jurisdiction.  *28 U.S.C. § 1738A(f).*

¶21    It is undisputed that, when the Pennsylvania proceedings were initiated on August 8, 2003, A.B.A.M. and C.M. resided in Pennsylvania and B.A. had moved to Seattle and intended to remain there.  Because § 40-7-202(1)(b) allows either a court of this state or a court of another state to determine that neither the child nor any of the parents reside in the original state, the Pennsylvania Court had authority under our Montana statutes to make this determination.  Our review of the record further indicates that the Pennsylvania Court had ample evidence before it to support such a determination.

¶22    C.M. further directs our attention to the Commissioners' Note, Number 2, to § 40-7-202, MCA.  The Commissioners' Notes explain that states must give full faith and credit to

9

custody determinations made by the original decree State--in this case, Montana--unless one of two situations occurs, the second of which is,

> Continuing jurisdiction is lost when the child, the child's parents, and any person acting as a parent no longer reside in the original decree State. . . . It is the intention of this Act . . . that . . . subsection (1)(b) . . . means that the named persons no longer continue to actually live within the State. Thus, unless a modification proceeding has been commenced, when the child, the parents, and all persons acting as parents physically leave the State to live elsewhere, the exclusive, continuing jurisdiction ceases.
>
> The phrase 'do not presently reside' is not used in the sense of a technical domicile. The fact that the original determination State still considers one parent a domiciliary does not prevent it from losing exclusive, continuing jurisdiction after the child, the parents, and all persons acting as parents have moved from the State.
>
> If the child, the parents, and all persons acting as parents have all left the State which made the custody determination prior to the commencement of the modification proceeding, considerations of waste of resources dictate that a court in State B, as well as a court in State A, can decide that State A has lost exclusive, continuing jurisdiction. . . .
>
> Jurisdiction attaches at the commencement of a proceeding. . . .
>
> Exclusive, continuing jurisdiction is not reestablished if, after the child, the parents, and all persons acting as parents leave the State, the non-custodial parent returns.

¶23 In *Vannatta*, we examined a situation in which one parent remained in the child's birth state of North Dakota, while the other parent relocated to Montana. The Montana parent attempted to commence a custody proceeding here at a time when the child also resided in North Dakota with the other parent. *Vannatta*, ¶ 3. We held that, because the child and one parent remained residents of a state which had already exercised jurisdiction in a related custody matter, the Montana District Court did not gain jurisdiction in the

10

absence of a determination by a North Dakota court that it no longer has exclusive, continuing jurisdiction, or that a Montana court would be a more convenient forum. *Vannatta*, ¶ 13. However, we further noted that, if either the Montana or the North Dakota court were to determine that neither the child nor either parent resided in North Dakota, this would also allow Montana to assume jurisdiction in the matter. *Vannatta*, ¶ 13.

¶24 In the current case, we are faced with that situation. At the beginning of this proceeding, B.A. was to be found in Seattle, Washington, and C.M. and A.B.A.M. resided in Pennsylvania. Thus, at that time, Pennsylvania could make a determination, pursuant to § 40-7-202(1)(b), MCA, that neither A.B.A.M., C.M., nor B.A. "presently" resided within Montana on the day the proceeding commenced. Once this determination was made in Pennsylvania--on the basis of ample, credible and essentially undisputed testimony--the Montana District Court no longer had exclusive, continuing jurisdiction.

¶25 Thus, we conclude that the Pennsylvania Court of Common Pleas appropriately assumed jurisdiction over this case pursuant to its application of § 40-7-202(1)(b), MCA, and in accordance with the PKPA, and we further conclude that the Montana District Court erred in its determination that it retained jurisdiction in this matter.

**CONCLUSION**

¶26 For the foregoing reasons, we reverse the Order of the Montana District Court in which it refused to relinquish jurisdiction to the Court of Common Pleas of the Seventeenth Judicial District Court, Snyder County Branch, Pennsylvania.

11

/S/ PATRICIA O. COTTER

We Concur:

/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE