No. 04-070

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 301

IN THE MATTER OF M.W., K.W., and A.L.,

    Youths in Need of Care.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, Cause No. DN 2001-102
The Honorable Gregory R. Todd, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Nancy G. Schwartz, Attorney at Law, Billings, Montana

    For Respondents:

    Honorable Mike McGrath, Montana Attorney General, Jennifer Anders, Assistant Attorney General, Helena, Montana; Judy Williams, Assistant Attorney General, Child Protection Unit, Billings, Montana; Dennis Paxinos, Yellowstone County Attorney, Billings, Montana; Damon L. Gannett, Attorney at Law (Guardian ad Litem), Billings, Montana

Submitted on Briefs:  August 31, 2004

Decided:   October 26, 2004

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1      S.W. is the biological mother of three daughters, M.W., K.W. and A.L.  In November 2001, the Department of Public Health and Human Services, Child and Family Services Division (hereinafter "the Department") filed a Petition for Emergency Protective Services and Temporary Legal Custody of the children.  The Petition was granted in December 2001. In April 2002, the children were adjudicated Youths in Need of Care.  In February 2003, the Department sought termination of S.W.'s parental rights.  The District Court terminated S.W.'s rights to the children on August 13, 2003.  S.W. appeals.  We affirm.

## ISSUES

¶2      A restatement of the issues before this Court are:

¶3      Did the District Court abuse its discretion by admitting the "affidavit" of the social worker over the objection of S.W.?

¶4      Did the District Court err by adopting the Department's proposed findings of fact and conclusions of law?

¶5      Did the District Court err when it found that S.W.'s conduct or condition rendering her unfit was unlikely to change within a reasonable period of time?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6      S.W.'s three daughters range in age from nine to seventeen.  The biological fathers of the girls have relinquished their parental rights.

¶7      The Department first became involved in S.W.'s family in 1987, when S.W.'s husband at the time took their two and a half year old son, B.W. (who is not a party to this

2

case), to the Department and reported that S.W. no longer wanted the child and was abusive toward him. B.W. was placed in temporary custody and later returned to S.W. and her husband. In May 1987, M.W. was born. The Department received intermittent reports of family problems involving both B.W. and M.W. through 1993. No reports were filed between 1993 and 2000. By June 2000, S.W. was divorced from B.W., M.W. and K.W.'s father, and had ended her relationship with A.L.'s father.

¶8 From June 2000 until late November 2001, the Department received numerous reports of child neglect and use of illegal drugs by various people living in the home with the children. The Department also received notice that J.H., an untreated sex offender, was living with S.W. and the children. S.W. claimed to be common-law married to J.H. On November 26, 2001, K.W. was hospitalized for what appeared to be a suicide attempt. S.W.'s mother was taking care of M.W., K.W., and A.L. at the time because S.W. was in jail on an outstanding warrant.

¶9 The Department removed the three children from the grandmother's care and placed M.W. and K.W. at Youth Services Center (Y.S.C.), and placed A.L., who was six years old at the time, in foster care.

¶10 In December 2001, S.W. was sentenced to a six year deferred sentence for forgery. During this time, M.W. and K.W. were moved from Y.S.C. and placed with their maternal uncle and his wife.

¶11 In April, 2002, the three girls were adjudicated Youths in Need of Care. S.W. entered into her first Treatment Plan covering the time period between January 17, 2002, and July

11, 2002. Under this Treatment Plan, S.W. was to establish a lifestyle free from prescription and illegal drug use; attend anger management classes; demonstrate that she could provide a consistent, financially stable and appropriate home environment for the children; increase her knowledge of parenting skills; and cooperate with and assist the Department in assessing compliance with this Plan. The only goal with which she complied was the last one.

¶12 In September 2002, the Court extended the Department's temporary custody for another six months and approved S.W.'s second Treatment Plan covering the time period from August 23, 2002, to February 23, 2003. Under this Treatment Plan, S.W. was to provide a safe environment for her children; improve her mental health status; maintain and improve her bond with her daughters; and cooperate with the Department. S.W. was noncomplaint with each goal. During this time, she continued living, at least intermittently, with J.H. who remained an untreated sex offender. She continued allowing a nephew, who used illegal drugs in her home and who had been sexually inappropriate with S.W.'s daughters, to live with her as well. She refused to provide random urinalysis testing after testing positive for methamphetamine and she would not provide the Department with a certificate of completion for anger management class. She did not visit her children regularly and would not maintain weekly contact with her social worker.

¶13 On February 24, 2003, the Department filed a Petition for Permanent Legal Custody and Termination of Parental Rights with Right to Consent to Adoption. The hearing took place over several days between March 21, 2003, and May 2, 2003. On August 13, 2003, the District Court issued its Findings of Fact, Conclusions of Law and Order in which it

4

terminated S.W.'s parental rights to her children, and awarded permanent legal custody of the girls to the Department. It is from this decision that S.W. appeals.

## STANDARD OF REVIEW

¶14 We review a district court's ruling on the admissibility of evidence for an abuse of discretion. The determination of whether evidence is relevant and admissible is left to the sound discretion of the trial judge and will not be overturned absent a showing of abuse. *State v. Teters*, 2004 MT 137, ¶ 17, 321 Mont. 379, ¶ 17, 91 P.3d 559, ¶ 17 (internal citations omitted).

¶15 We review a district court's factual findings to determine if they are clearly erroneous. *C.M. v. B.A. (In re A.B.A.M.)*, 2004 MT 222, ¶ 12, 322 Mont. 406, ¶ 12, 96 P.3d 1139, ¶ 12. This standard applies whether the court develops its own findings or adopts the findings of one of the parties. *In re Marriage of Mease*, 2004 MT 59, ¶ 15, 320 Mont. 229, ¶ 15, 92 P.3d 1148, ¶ 15. A finding is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us the district court made a mistake. *In re Marriage of Herrera*, 2004 MT 40, ¶ 18, 320 Mont. 71, ¶ 18, 85 P.3d 781, ¶ 18 (citation omitted).

¶16 The District Court concluded that S.W.'s conduct or condition which renders her unfit to parent her children is unlikely to change within a reasonable time. This is a conclusion of law that we review *de novo* for correctness. *Rossi v. Pawiroredjo*, 2004 MT 39, ¶ 13, 320 Mont. 63, ¶ 13, 85 P.3d 776, ¶ 13 (citation omitted).

## DISCUSSION

¶17 During the course of the hearing, while S.W.'s Department social worker was on the stand, he was asked if the affidavit he prepared in February 2003 was "true and correct to the best of [his] knowledge." He responded that it was and that it was based on his work and "the records kept in the usual course of business of the department." With the court's permission, he then adopted the contents of the affidavit as part of his testimony.

¶18 S.W. objected to the admission of this affidavit as evidence. She argued that the document contained numerous sources of hearsay, as well as hearsay-within-hearsay, none of which was covered by any exception to the hearsay rule. She provided as an example that the affidavit contained a reference to a report that the Department had received notifying it that S.W. had assaulted M.W. and was charged with Partner Family Member Assault. S.W. maintained that because the person who provided the information contained in that report was not subject to cross-examination, the information was unreliable and should not be admitted.

¶19 The Department countered that the affidavit was a legitimate business record kept in the usual course of business and the social worker was on the stand prepared to be cross-examined about any items with which S.W. was concerned. The District Court overruled the objection and admitted the affidavit into evidence. Significantly, the court urged S.W. to cross-examine on issues of concern and alert the court to any provisions that she wished to challenge.

¶20 During S.W.'s cross examination of the social worker, counsel did not ask any questions about the contents of the affidavit; she did not direct the court's attention to any

6

specific references to objectionable hearsay or hearsay-within-hearsay; nor did she move to have stricken any portion of the affidavit as inadmissible.

¶21 On appeal, S.W. posits three reasons why the District Court should have found the affidavit inadmissible: 1) the State's attempt to introduce inadmissible evidence is a "serious violation of [S.W.'s] due process rights;" 2) the "affidavit" is not a true "affidavit;" and 3) the affidavit contained hearsay that was not covered by any exception to the hearsay rule.

¶22 Rule 103(a)(1), M.R.Evid., requires a party objecting to the admission of evidence to make a timely objection and to state the specific ground for the objection. In the case before us the only objection S.W. made at the hearing was that the affidavit contained hearsay; therefore, that is the only objection we address.

¶23 Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 802, M.R.Evid., states, "[h]earsay is not admissible except as otherwise provided by statute, these rules, or other rules applicable in the court of this state."

¶24 Rule 803, M.R.Evid., provides numerous exceptions to the hearsay rule. Under Rule 803(6), M.R.Evid., statements that would otherwise satisfy the definition of hearsay and be excluded are allowed because the statements are contained in records prepared and used "in the course of a regularly conducted business activity." The Department argued to the District Court that the affidavit was a legitimate business record under Rule 803(6), and therefore was exempt from the hearsay exclusion. The District Court invited S.W. to cross examine

on the affidavit and move to strike any specific provisions she deemed inadmissible. S.W. failed to do either.

¶25 It is a maxim of jurisprudence that acquiescence in error takes away the right of objecting to it. Section 1-3-207, MCA. In this case, S.W.'s failure to cross-examine the social worker regarding the contents of the affidavit, her failure to alert the court to inadmissible hearsay, and her failure to move to have such testimony stricken obviates any error that the District Court may have been committed vis-à-vis admission of this affidavit. *See State v. Gardner*, 2003 MT 338, ¶ 44, 318 Mont. 436, ¶ 44, 80 P.3d 1262, ¶ 44 (citing *State v. LaDue*, 2001 MT 47, ¶ 23, 304 Mont. 288, ¶ 23, 20 P.3d 775, ¶ 23 (citation omitted)).

¶26 Next, S.W. maintains that it was error for the District Court to adopt, virtually verbatim, the Department's proposed findings of fact. She argues that because two of the sixty-five factual findings adopted by the court contained inadmissible evidence, "it is extremely difficult to conclude that the findings . . . reflect the judge's own consideration of the facts and the exercise of the judge's own judgment . . . ." *See In re Marriage of Allison* (1994), 269 Mont. 250, 887 P.2d 1217. S.W. correctly states that Findings 34[1] and 42[2]

_____

[1] Finding 34 pertains to S.W. telling the city Housing Authority that her daughters were living with her in an effort to obtain better living quarters. S.W. challenged this testimony as hearsay and the District Court sustained the challenge.

[2] Finding 42 pertains to the testimony of Family Support Network's Heather Hyatt, the caseworker assigned to S.W., who testified that she did not believe S.W. could adequately parent her daughters if they were returned to her. At the time Hyatt posited her opinion, S.W. objected that the Department had not laid an adequate foundation for Hyatt to provide such a professional opinion. The District Court sustained the objection.

contain references to evidence that S.W. challenged at trial and that the District Court ruled was inadmissible.

¶27    The Department rebuts that while Finding 34 should not have been included, it was not critical to the court's decision to terminate S.W.'s parental rights and should be disregarded.  Additionally, the Department asserts that while Hyatt's opinion of S.W.'s ability to adequately parent her children was justifiably ruled inadmissible and should not have been included in the court's factual findings, this same opinion was presented to the court by other witnesses who were allowed to express such an opinion.  The Department contends, therefore, that if the court erred, it was harmless error and that there was substantial evidence to support the District Court's Order terminating S.W.'s parental rights.

¶28    As recognized by S.W., we discourage a district court's adoption, verbatim, of a prevailing party's proposed findings, but such adoption does not constitute error *per se*. *Allison*, 269 Mont. at 265, 887 P.2d at 1226 (*quoting In re Marriage of Nikolaisen* (1993), 257 Mont. 1, 5, 847 P.2d 287, 289).  We have further held that a court can adopt a party's proposed findings of fact and conclusions of law if they are sufficiently comprehensive and pertinent to the issues to provide a basis for a decision and are supported by the evidence. *Allison*, 269 Mont. at 265, 887 P.2d at 1226 (citations omitted).

¶29    In the case before us, the District Court erroneously included in its extensive findings a *de minimus* amount of inadmissible evidence.  Our review of the record, however, leads us to conclude that there was substantial evidence to support the remainder of the District Court's findings and conclusions and its determination to terminate S.W.'s parental rights.

9

Therefore, the District Court did not err by issuing findings and conclusions substantially similar to those proposed by the Department. Furthermore, the careless, but harmless, inclusion of such a small amount of inadmissible evidence does not warrant rejecting the District Court's ultimate determination. *See Investors Security Co. v. Moore* (1942), 113 Mont. 400, 127 P.2d 225.

¶30 Lastly, S.W. claims that the District Court erred when it concluded that the conduct or condition that rendered her unable to adequately care for her daughters was unlikely to change within a reasonable time. The likelihood that a parent's conduct or condition is going to change in a reasonable amount of time is an element of the statutory criteria for termination of parental rights. Under § 41-3-609(1)(f), MCA, a court may order termination of a parent-child relationship if:

> the child is an adjudicated youth in need of care and both of the following exist:
> (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and
> (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

¶31 In the case before us, the children had been adjudicated youths in need of care and the court had heard substantial evidence that S.W. had not complied with her treatment plans. These factors alone, however, are insufficient to terminate parental rights and it is mandatory that § 41-3-609(1)(f)(ii) be met as well.

¶32 S.W. relies exclusively on the testimony of her psychologist to demonstrate sufficient improvement in her physical and mental health conditions so as to warrant reunification with

10

her children, or at least to forestall termination of her parental rights. Our review of the record confirms that her psychologist testified that over the course of S.W.'s treatment, he had seen some improvement in her physical and psychological limitations. He also testified, however, that her improvement was possibly the result of not having to take care of her children. He further stated that he continued to have "ongoing concerns" about her ability to protect her children from abuse or potentially harmful relationships with men in which S.W. is or may be involved. He also noted continued concerns about S.W.'s "unstable moods," while acknowledging some improvement in that area. The psychologist indicated that S.W.'s personality disorders are deeply rooted and are resistant to change or improvement.

¶33    In addition to S.W.'s psychologist's testimony, the court heard from a County deputy, a County deputy sheriff, S.W.'s probation officer, a Family Support Network home visitor and a Department social worker, all of whom were involved in S.W.'s case or assigned to work with S.W. and her children. Several of these witnesses recounted episodes occurring within three weeks of the court hearing in which S.W. had displayed erratic, angry or hostile behavior and was uncooperative with the Department. S.W.'s social worker, who had attempted to work closely with her throughout this period, testified that, based on his experience, he did not think S.W.'s conduct and condition rendering her unfit to adequately parent her daughters was likely to change in a reasonable period of time and that he believed it would be detrimental to the children to be returned to S.W. He further testified that the

11

children appeared to be doing well in their current living arrangements and a stable, permanent home with an uncle and aunt was available to them until they reached eighteen.

¶34 It has long been the law in Montana that district courts must render parent/child termination decisions based on the best interests of the child. Under § 41-3-609(3), MCA, a district court, when evaluating whether a parent's conduct or condition is likely to change in a reasonable amount of time, must "give primary consideration to the physical, mental and emotional conditions and needs of the child." *See Matter of D.S.N.* (1986) 222 Mont. 312, 722 P.2d 614; *In re Custody of T.M.* (1994), 267 Mont. 75, 79, 881 P.2d 1333, 1336 (The best interest of the child is paramount and takes precedence over parental rights.); *In re J.C.B.*, 2004 MT 111, ¶12, 321 Mont. 110, ¶ 12, 88 P.3d 1280, ¶ 12.

¶35 Moreover, the District Court listened to hours of testimony, questioned witnesses personally and, from the record, was very engaged in the hearing. The court indicated that it took judicial notice of other judicial proceedings involving S.W. and appeared to have reviewed her cases carefully. Based upon the lengthy hearing and review of relevant criminal proceedings, the District Court concluded that it was in the children's best interests to terminate S.W.'s parental rights and that S.W.'s conduct/condition was not likely to change in a reasonable period of time. It is within the court's realm to determine the credibility of witnesses and the weight to be given their testimony. *State v. Heath*, 2004 MT 126, ¶ 52, 321 Mont. 280, ¶ 52, 90 P.3d 426, ¶ 52. In this case, the record reveals that the District Court's conclusion that S.W.'s conduct/condition was not likely to change in a reasonable period of time is supported by the testimony presented.

**CONCLUSION**

¶36    For the foregoing reasons, we affirm the District Court.


/S/ PATRICIA O. COTTER

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE
/S/ JAMES C. NELSON


_____


_____


_____


_____
                Justices