2006-NMCA-023

129 P.3d 167

**STATE of NEW MEXICO, ex rel. CHILDREN, YOUTH AND FAMILIES DEPARTMENT, Plaintiff–Appellant,**

v.

**DONNA J., Michael H., and Tommy J. II, Respondents,**

**Martha K. and Anthony K., Intervenors,**

**Elsie N., Intervenor/Appellee.**

**In the Matter of Jessica H. and Elizabeth N., Children**

**No. 25,872.**

Court of Appeals of New Mexico.

Jan. 12, 2006.

Children, Youth & Families Department, Rebecca J. Liggett, Santa Fe, NM, for Appellant.

Atkinson & Kelsey, P.A., Patrick L. McDaniel, Albuquerque, NM, for Appellee.

Karen L. Townsend, Aztec, NM, Guardian Ad Litem.

F. Chester Miller III, PC, F. Chester Miller III, Farmington, NM, for Respondent Donna J.

## OPINION

WECHSLER, Judge.

{1} In this abuse and neglect case, with child custody proceedings in both Texas and New Mexico, we address whether exclusive, continuing jurisdiction remains in the Texas court after the father dies and the mother moves to New Mexico with the child, but is later incarcerated in Texas at the time the child's grandmother files a petition to modify the Texas court's custody order. We hold that the mother resided in Texas under the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA), NMSA 1978, §§ 40–10A–101 to –403 (2001), and affirm the ruling of the district court granting full faith and credit to the orders of the Texas court.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} The jurisdictional background of this case is not disputed. Respondent Donna J. is the mother of Elizabeth N. Raymond N., deceased, is the father. In a consolidated proceeding, initiated by Father's paternity and Mother's divorce petitions, a Texas district court declared Father's paternity and ruled that Mother and Father were never married. In a final order signed on July 19,

2001, it appointed both parents as joint managing conservators of Elizabeth and ordered that Mother had the right to establish Elizabeth's primary residence in one of two Texas counties.

{3} Thereafter, Mother moved between Texas and New Mexico several times. On April 30, 2002, Father filed a motion for the Texas court to enforce its final order because of Mother's violations. In May 2002, Mother, Elizabeth, and Mother's other child, Jessica H., established permanent residence with Mother's father in New Mexico.

{4} Father was murdered on September 2, 2002. Mother was arrested on November 19 and returned to Texas on November 20, 2002. Mother entered a plea to first degree murder and received a sentence of fifteen years confinement by the Texas Institutional Division, less 486 days credit for time spent in the county jail.

{5} During the time that Mother was incarcerated in Texas, legal custody proceedings ensued in both Texas and New Mexico. The existing Texas proceeding, which had been initiated by Father's paternity petition and Mother's divorce petition, was dismissed for lack of prosecution on January 21, 2003. Then, on March 17, 2003, in the same proceeding, Elsie N., Elizabeth's paternal grandmother (Grandmother), filed a petition to modify the parent-child relationship with the Texas court, asking for modification of the final order and asserting that her appointment as sole managing conservator would serve Elizabeth's best interest. After Grandmother amended her petition and after notice to Mother and Elizabeth's maternal grandmother, the Texas court held a hearing and issued temporary orders on August 6, 2003, appointing Grandmother temporary sole managing conservator and appointing Mother temporary possessory conservator of Elizabeth. The orders were to "continue in force until the signing of the final order or until further order of [the][c]ourt."

{6} During the same general time period in New Mexico, the Children, Youth and Families Department (CYFD) took protective custody of Elizabeth and Jessica and, on June 25, 2003, filed an abuse and neglect petition in the district court. Grandmother and her niece and niece's husband, Martha K. and Anthony K., intervened so that they could be considered for placement or custody of Elizabeth. As Mother requested, CYFD placed Elizabeth and Jessica with other, unrelated foster parents. The case proceeded with judicial reviews and permanency hearings. Grandmother participated in the proceedings by telephone and was represented by counsel.

{7} At the end of 2004 and in early 2005, the separate proceedings came to a head and merged. The Texas case was set for final trial on February 4, 2005. After notice of this setting had been received by CYFD, on December 7, 2004, the district court denied CYFD's motion to terminate parental rights because of the unresolved placement issues and ordered the parties to mediate to attempt to agree on the terms of an open adoption. The Texas court held its hearing. Despite notice, Mother did not appear. The Texas court granted Grandmother's request to modify its original custody order as in the best interest of Elizabeth and appointed Grandmother as Elizabeth's sole managing conservator with no possessory conservator. It stated that it retained exclusive jurisdiction over the case because Mother unlawfully removed Elizabeth from the jurisdiction of the court in violation of the court's valid order.

{8} Elizabeth's foster parents intervened in the Texas case and requested a new trial. The Texas court dismissed their petition, stating that although the New Mexico court had temporary jurisdiction to make orders for Elizabeth's immediate protection, at the time the New Mexico court placed Elizabeth with CYFD, Grandmother's petition was pending in the Texas court, and the Texas court "had continuing, exclusive jurisdiction over the child as a result of prior proceedings" under the UCCJEA, Tex. Family Code Ann. § 152.202 (Vernon 2002); *see* NMSA 1978, §§ 40–10A–101 to –403. The Texas court concluded that the New Mexico orders entered after the New Mexico court had actual notice of the Texas proceedings on August 13, 2003, were void for lack of jurisdiction. The Texas court determined that it was not necessary for it to communicate with

the New Mexico court based on its determination that it had continuing, exclusive jurisdiction.

{9} The next actions in the New Mexico court led to this appeal. Grandmother, Martha K., and Anthony K. filed a motion to dismiss as to Elizabeth for lack of jurisdiction under the UCCJEA. Grandmother filed a notice of registration of the Texas custody order and a verified motion to enforce the Texas custody order and for immediate transfer of physical custody. After conducting a hearing, the district court granted Grandmother's motion to dismiss. It concluded that the Texas court had continuing, exclusive jurisdiction, had not relinquished jurisdiction, and did not lose jurisdiction because Mother resided in Texas due to her incarceration in a Texas correctional facility. It afforded full faith and credit to the orders of the Texas court and, based on its jurisdictional conclusion and the prohibition against simultaneous child custody proceedings, set aside its orders except as to those issued under its emergency jurisdiction. It ordered the transfer of the physical custody of Elizabeth "no sooner than three and no later than five days after the child's school year ends." CYFD appealed. This Court has held CYFD's application for a stay of the district court's judgment under advisement pending further order.

## PKPA AND UCCJEA

{10} Article IV, Section 1 of the United States Constitution requires that each state give full faith and credit to the judicial proceedings of other states. In furtherance of this constitutional provision, Congress enacted the Parental Kidnaping Prevention Act (PKPA), 28 U.S.C. § 1738A (2000), to ensure state compliance with the child custody orders of other states. *See State ex rel. Valles v. Brown*, 97 N.M. 327, 330, 639 P.2d 1181, 1184 (1981) ("The PKPA is intended to eliminate [parental kidnaping] by requiring states to give full faith and credit to custody decrees."). The UCCJEA was designed as a uniform state law to complement the PKPA and to allow states to fulfill their full faith and credit requirements. *See* UCCJEA prefatory note, 9 U.L.A. 650 (1999). Its purposes follow that of the Uniform Child Custo-

dy Jurisdiction Act (UCCJA), 9 U.L.A. 261 (1999), to provide jurisdictional clarity and to promote interstate cooperation. UCCJA prefatory note, 9 U.L.A. at 264. Both New Mexico and Texas have adopted the UCCJEA and have largely identical provisions. *Compare* NMSA 1978, §§ 40–10A–101 to –403, *with* Tex. Family Code Ann. §§ 152.001–152.317 (Vernon 2002 & Supp.2005).

{11} Section 40–10A–206(a) of the New Mexico UCCJEA structures our analysis. It prohibits a New Mexico court from exercising jurisdiction under the UCCJEA, except in emergency circumstances, if an action has been commenced in another state "having jurisdiction substantially in conformity with" the UCCJEA unless the other state's proceeding is terminated or stayed. *Id.* The New Mexico district court determined that Section 40–10A–206(a) precluded its jurisdiction. If the Texas court had exclusive, continuing jurisdiction as contemplated by Section 202 of the UCCJEA, it was acting "in conformity with" the UCCJEA. We review the district court's determination by interpreting the UCCJEA, a task we perform de novo. *State v. Rivera*, 2004–NMSC–001, ¶ 9, 134 N.M. 768, 82 P.3d 939.

{12} Section 202 of the UCCJEA addresses the exclusive, continuing jurisdiction of the courts of the state entering a child custody order. Under Section 202(a), a court that enters a child custody order has "exclusive, continuing jurisdiction" over its order until (1) a court of the same state "determines that neither the child, the child's parents, and any person acting as a parent do not have a significant connection with [the][s]tate and that substantial evidence is no longer available in [the][s]tate concerning the child's care, protection, training, and personal relationships;" or (2) a court of the same or another state "determines that the child, the child's parents, and any person acting as a parent do not presently reside in [the][s]tate."

{13} Under Section 202, the Texas court had exclusive, continuing jurisdiction as of March 17, 2003, when Grandmother filed her petition to modify the court's original custody order. The Texas court had entered

the initial custody order concerning Elizabeth in July 2001 and had the jurisdiction to do so under Section 201 of the UCCJEA. This order, the subject of Grandmother's petition, triggered the Texas court's exclusive, continuing jurisdiction under Section 202. After September 2, 2002, even though Father had died and Mother and Elizabeth had left Texas, the Texas court did not make any determination, as part of its exclusive ability under Section 202(a)(1), that there was a lack of significant connection for Texas to continue its jurisdiction. Under Section 40–10A–202(a)(2) and the Texas equivalent, Section 155.202(a)(2), after Father died and Mother and Elizabeth moved to New Mexico, either the Texas or the New Mexico court had the authority to make a determination that Elizabeth and Mother no longer resided in Texas. Neither court made such a determination.

{14} We do not agree with CYFD that the Texas court lost its exclusive, continuous jurisdiction when Father died because Mother and Elizabeth had already moved from Texas. CYFD relies on the Comment to Section 202 by the National Conference of Commissioners on Uniform State Laws, which states the intention that "unless a modification proceeding has been commenced, when the child, the parents, and all persons acting as parents physically leave the State to live elsewhere, the exclusive, continuing jurisdiction ceases." UCCJEA § 202 cmt., 9 U.L.A. at 674. Although the Comment stresses the importance of physical presence to exclusive, continuing jurisdiction, the UCCJEA language specifically requires action by either the home or another state before exclusive, continuing jurisdiction in the home state ceases. Section 40–10A–202(a); see In re Lewin, 149 S.W.3d 727, 736 (Tex.App.2004) (stating that "[a] court's exclusive continuing jurisdiction does not vanish immediately once all the parties leave the state," but that jurisdiction remains with the initial court until a judicial determination is made under UCCJEA § 202); C.M. v. B.A. (In re Parenting of A.B.A.M.), 2004 MT 222, ¶¶ 4, 8–11, 26, 322 Mont. 406, 96 P.3d 1139, ¶¶ 4, 8–11, 26 (holding that Pennsylvania court had jurisdiction after the father moved to Washington, the mother and the child moved to Pennsylvania, and the Pennsylvania court, after a

hearing, determined that the parties no longer resided in Montana). We understand the basis for this requirement. Parents can easily move back and forth between states as Mother did after the Texas court's July 2001 order. An automatic loss of jurisdiction, without any factual determination, would add uncertainty, diminish the oversight ability of the courts, and increase conflicts between states. These results are contrary to the purposes of the UCCJEA. See generally UCCJEA prefatory note, 9 U.L.A. at 651–53. Because no determination under Section 202 was made in this case, the Texas court did not automatically lose its exclusive, continuing jurisdiction when Father died.

{15} Nor does the Texas court's dismissal in January 2003 have bearing on our analysis. The Texas court obtained exclusive, continuing jurisdiction with its July 2001 custody order. The UCCJEA does not require that the case in which the initial custody order is entered be ongoing when a later petition is filed. See Section 40–10A–202. The district court properly looked to the Texas court's jurisdiction at the time Grandmother filed her petition to ascertain the nature of the Texas court's jurisdiction.

■ {16} The Texas court had exclusive, continuing jurisdiction under Section 40–10A–202 when Grandmother filed her petition to modify because, by that time, Mother resided in Texas as a result of her incarceration. CYFD contends that Mother's incarceration does not meet the UCCJEA requirement of residence to justify exclusive, continuing jurisdiction. She argues that although the Comment indicates that "reside" for the purposes of Section 202 does not mean "technical domicile," it nevertheless requires a volitional act. UCCJEA § 202 cmt., 9 U.L.A. at 674. She maintains that involuntary relocation, such as incarceration and service in the armed forces, does not meet the Section 202 definition. We do not agree under these circumstances.

{17} The purposes of the UCCJEA do not require domicile or volition, although evidence consistent with intent to reside is relevant to the analysis. As CYFD points out, the Comment states that "[t]he phrase 'do

not presently reside' is not used in the sense of a technical domicile." UCCJEA § 202 cmt., 9 U.L.A. at 674. It states that intent of Section 202(a)(2) is to address whether the persons named "continue to actually live within the [s]tate." *Id.* Actually living in the state does not import the volition or intent argued by CYFD and does not exclude living in a prison. A requirement of volition or intent to reside would be contrary to the purpose of the UCCJEA to discourage continuing child custody controversies because it would invite litigation of the issue. *See In re McCoy,* 52 S.W.3d 297, 302 (Tex.App.2001) (stating that the UCCJEA has the same objectives as the UCCJA including discouraging continued controversies over child custody).

{18} The cases relied on by CYFD that were decided under the UCCJEA do not require a different result. CYFD quotes *In re Brilliant,* 86 S.W.3d 680, 688 (Tex.App. 2002), to analogize incarceration to service in the armed forces, stating that "[i]n other contexts, the Family Code contemplates that time spent by a Texas domiciliary outside Texas while in the service of the armed forces is considered residence in Texas." The same provision of the Texas Family Code has no application to this case. Moreover, the *Brilliant* case concerned the initial jurisdiction of the court under Section 201 of the UCCJEA and the issue of whether the child was temporarily absent from Texas for reasons other than military service. *In re Brilliant,* 86 S.W.3d at 682, 686–90. In this case, we are concerned with the exclusive, continuing jurisdiction of the Texas court; the Texas court's initial jurisdiction was established when Father and Mother respectively filed their petitions for paternity and divorce. CYFD also cites *In re Brilliant* and *Vannatta v. Boulds,* 2003 MT 343, 318 Mont. 472, 81 P.3d 480, to indicate that courts consider factors in addition to physical presence in interpreting the UCCJEA. But, as we have mentioned, *In re Brilliant* does not involve Section 202. In *Vannatta,* the court used evidence of the child's activities to re-

flect her residence. 2003 MT 343, ¶¶ 4, 16, 318 Mont. 472, 81 P.3d 480. The case demonstrates that evidence of volitional acts can indicate residence, not that the absence of such acts indicates lack of residence.

{19} We lastly address CYFD's contention that the Texas court's jurisdiction results in a custody determination contrary to the purpose of the UCCJEA of promoting cooperation between states "to ensure that a custody decision is rendered in the state that can better determine the best interest of the child." The UCCJEA pursues that purpose by encouraging communication between courts of different states concerning proceedings and enabling courts to allow testimony to be taken, hearings held, and information exchanged between states. Sections 40–10A–110 to –112. However, as the UCCJEA Prefatory Note states, "[t]he UCCJEA eliminates the term 'best interests' in order to clearly distinguish between the jurisdictional standards and the substantive standards relating to custody and visitation of children." UCCJEA prefatory note, 9 U.L.A. at 652. At this stage of this case, the jurisdictional standards are at issue, and we apply the UCCJEA jurisdictional provisions to reach a decision.

## CONCLUSION

{20} Because we determine that the Texas court retained exclusive, continuing jurisdiction and the New Mexico court therefore did not have subject matter jurisdiction, we affirm. We deny CYFD's application for a stay.

{21} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY and IRA ROBINSON, Judges.