2012 CO 3

**In re the Marriage of George T. BRANDT, Petitioner**

v.

**Christine BRANDT, Respondent.**

**No. 11SA248.**

Supreme Court of Colorado,
En Banc.

Jan. 23, 2012.

Litvak Litvak Mehrtens & Epstein, P.C., Stephanie M. Holder, Ronald D. Litvak, Denver, Colorado, Attorneys for Petitioner.

Law Office of Stephen J. Harhai, Stanley G. Lipkin, Patricia A. Cooper, Denver, Colorado, Attorneys for Respondent.

Justice HOBBS delivered the Opinion of the Court.

¶ 1 Pursuant to C.A.R. 21, we issued our rule to show cause in this original proceeding to determine whether the district court erred in assuming jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), sections 14–13–101 to –403, C.R.S. (2011), to modify a child custody order that the State of Maryland had issued.[1]

¶ 2 This proceeding arises out of an order issued by the Arapahoe County District Court on May 25, 2011 in which the court, acting upon a petition filed by George Brandt, registered a child custody determination originally entered in Maryland and assumed jurisdiction to modify the custody order. Petitioner in this proceeding, Christine Brandt, seeks relief from the district court order assuming jurisdiction. The district court determined that, because neither the child nor either parent "currently reside[d]" in Maryland at the time George Brandt filed the petition to modify, Maryland had lost exclusive continuing jurisdiction under the UCCJEA.

¶ 3 We hold that the district court erred by failing to apply the appropriate standard of review when assuming jurisdiction to modify Maryland's child custody order. The operative statutory term "presently reside" contained in sections 14–13–202(1)(b) and 14–13–203(1)(b) is not equivalent to "currently reside" or "physical presence," the two notions upon which the trial court incorrectly assumed jurisdiction. Instead, "presently reside" necessitates an inquiry broader than "technical domicile" into the totality of the circumstances that make up domicile—that is, a person's permanent home to which he or she intends to return to and remain. The appropriate legal standard to be applied in determining whether the issuing state lost exclusive continuing jurisdiction based on non-residency involves application of a totality of the circumstances test. Factors to be weighed in making the residency determina-

tion, a mixed question of fact and law, include but are not limited to the length and reasons for the parents' and the child's absence from the issuing state; their intent in departing from the state and returning to it; reserve and active military assignments affecting one or both parents; where they maintain a home, car, driver's license, job, professional licensure, and voting registration; where they pay state taxes; the issuing state's determination of residency based on the facts and the issuing state's law; and any other circumstances demonstrated by evidence in the case. The party asserting that the issuing state has lost exclusive continuing jurisdiction bears the burden of proof.

¶ 4 Accordingly, we reverse and vacate the district's court's order assuming jurisdiction, make our rule absolute, and remand this case for further proceedings consistent with this opinion.

## I.

¶ 5 Petitioner Christine Brandt and Respondent George Brandt were divorced in Montgomery County, Maryland on May 25, 2006. At that time, the terms of the parties' Voluntary Separation and Property Settlement Agreement were incorporated into the divorce decree. The agreement provided that the couple would have joint custody of their child, C.B., with Christine Brandt having primary physical custody. At the time of the divorce, George Brandt was an active duty member of the Army, having just returned from a tour of duty in Iraq. From 2006 to 2008, Christine Brandt and George Brandt lived in Maryland and shared custody of C.B.

¶ 6 In 2008, the Army transferred George Brandt to Fort Carson, Colorado Springs, Colorado. The parties divided time with C.B. equally during the summer of 2008, and C.B. returned to Maryland for the 2008–09 school year. George Brandt served at Fort

1. The issues Christine Brandt presents are:

   1) Did the district court err in finding that Petitioner no longer resides in Maryland, for purposes of determining modification jurisdiction under the UCCJEA?

   2) Does the State of Maryland still have exclusive, continuing jurisdiction under its own laws and under the UCCJEA?

   3) Was Petitioner herein accorded substantial due process before the Arapahoe County district court assumed jurisdiction?

Carson until 2010 when he retired, re-married, and settled with his new wife in Littleton, Colorado.

¶ 7 Christine Brandt was commissioned into the Army in 2009, serving in the Nursing Corps. Following training, she was stationed at Fort Hood, Texas, where she moved with C.B. from Maryland in March of that year. C.B.'s 2009 summer was also split between his parents. Christine Brandt was deployed to Iraq on active duty in April 2010. The parties mutually agreed that, while she was in Iraq, C.B. would live with George Brandt in Colorado. Christine Brandt returned from Iraq on October 10, 2010, and was reassigned to Fort Hood, Texas. She and George Brandt agreed to let C.B. complete the remainder of the 2010–11 school year in Colorado at which point George Brandt would return C.B. to Christine Brandt.

¶ 8 On April 26, 2011, Christine Brandt received military orders to return to Maryland and finish her active duty in a nondeployable position at Fort Meade. Her orders required her to report there no later than August 1, 2011, and authorized her to report there on July 15, 2011. As previously agreed between the parties, C.B. returned on May 22, 2011, to live with Christine Brandt, who was still at Fort Hood.

¶ 9 Meanwhile, on May 6, 2011, George Brandt filed a petition in the Arapahoe County district court to register the Maryland custody order pursuant to section 14–13–305, C.R.S. (2011), and to request that the court assume jurisdiction to modify the custody order pursuant to section 14–13–203, C.R.S. (2011) ("May 6 Petition"). Christine Brandt was served in Texas on May 18 with the May 6 Petition and a Notice of the Registration of the Maryland decree. On May 25, the district court entered its order registering the Maryland decree and assuming jurisdiction to modify it ("May 25 Order"). The court based its assumption of modification jurisdiction on the fact that C.B. had resided in Colorado for more than one year and neither

Christine Brandt nor George Brandt nor their child "currently reside[d]" in Maryland.

¶ 10 On June 1, within the time allowed to contest the petition following service upon her, Christine Brandt filed a pro se motion to dismiss the petition George Brandt had filed. On June 8, Christine Brandt and C.B. returned to her home in Maryland pursuant to her military orders. On June 13, George Brandt simultaneously filed a petition to modify parenting time in the Arapahoe County District Court, together with an emergency motion for issuance of a writ of habeas corpus and writ of assistance in order to secure the return of C.B. In the latter motion, George Brandt claimed that Christine Brandt abducted C.B. to Maryland without his consent because he and Christine Brandt had previously agreed that C.B. would spend the second half of the summer (commencing on June 25) with him in Colorado. The district court issued both requested writs on June 16.

¶ 11 On June 20, Christine Brandt traveled back to Texas to out-process from Fort Hood, during which time she left C.B. in Maryland with his maternal grandmother. At some point during the next week, C.B. and his grandmother traveled to Pennsylvania.[2] George Brandt, with the help of local law enforcement, exercised the Colorado writ, taking C.B. into his physical custody and returning to Colorado, where C.B. has resided with him since June 26.

¶ 12 In the meantime, Christine Brandt obtained counsel in Colorado and, on June 22, filed a motion for reconsideration and motion to dismiss the May 25 Order. She also filed an emergency motion for a telephone conference in Maryland, pursuant to which Judge Quirk in Montgomery County, Maryland held three teleconferences with Judge Russell in Arapahoe County during which both parties were represented by counsel.

¶ 13 On July 29, during the final teleconference, our district court said that: (1) Maryland had lost exclusive continuing jurisdic-

2. Christine Brandt claims that C.B. and his grandmother were visiting relatives while she was out of town to finish out-processing from her military installation; George Brandt alleges that

Christine Brandt kidnapped C.B. without permission and that her family helped secretly transfer C.B. across state lines.

tion due to Christine Brandt's presence in Texas, not Maryland; (2) under the UC-CJEA, the preferred forum is where a child has lived for six months; and (3) Colorado was the most convenient forum to hear this case. Judge Quirk explicitly disagreed and reiterated his position from earlier teleconferences that Maryland retained exclusive continuing jurisdiction over the custody order:

> [I]t would still be my decision that continuing exclusive jurisdiction is proper here because residence, quite frankly, within the meaning of our Maryland law, of Ms. Brandt has never been anywhere but Maryland, and has continued here, and there is a connection. That connection exists, as well as the connection of the child to Maryland.

¶ 14 The Maryland judge lamented that both states were now asserting jurisdiction, the very result the legislatures in both states had intended to avoid in enacting the uniform statute.

¶ 15 Christine Brandt petitioned us for a rule to show cause, which we issued. She claims that the district court erred in finding that she no longer resided in Maryland for purposes of determining modification jurisdiction under the UCCJEA. George Brandt argues that the district court properly assumed jurisdiction to modify the Maryland child custody order. George Brandt's motion to modify the child custody order awaits our decision.

## II.

¶ 16 We hold that the district court erred by failing to apply the appropriate standard of review when assuming jurisdiction to modify Maryland's child custody order. The operative statutory term "presently reside" contained in sections 14–13–202(1)(b) and 14–13–203(1)(b) is not equivalent to "currently reside" or "physical presence," the two notions upon which the trial court incorrectly assumed jurisdiction. Instead, "presently reside" necessitates an inquiry broader than "technical domicile" into the totality of the circumstances that make up domicile—that is, a person's permanent home to which he or she intends to return to and remain. The

appropriate legal standard to be applied in determining whether the issuing state lost exclusive continuing jurisdiction based on non-residency involves application of a totality of the circumstances test. Factors to be weighed in making the residency determination, a mixed question of fact and law, include but are not limited to the length and reasons for the parents' and the child's absence from the issuing state; their intent in departing from the state and returning to it; reserve and active military assignments affecting one or both parents; where they maintain a home, car, driver's license, job, professional licensure, and voting registration; where they pay state taxes; the issuing state's determination of residency based on the facts and the issuing state's law; and any other circumstances demonstrated by evidence in the case. The party asserting that the issuing state has lost exclusive continuing jurisdiction bears the burden of proof.

¶ 17 Accordingly, we reverse and vacate the district court's order assuming jurisdiction, make our rule absolute, and remand this case for further proceedings consistent with this opinion.

### A. Standard of Review

¶ 18 Whether a trial court has jurisdiction over a child custody proceeding presents a question of law, which we review de novo. *In re L.S.*, 257 P.3d 201, 204 (Colo. 2011). Our review of the law applicable to this case proceeds from the language and intent of the statute.

### B. The UCCJEA

¶ 19 The increasing mobility of society has made the issue of child custody jurisdiction and modification progressively more contentious. To combat conflicting state standards and requirements for jurisdiction, the National Conference of Commissioners on Uniform State Laws (NCCUSL) drafted the Uniform Child Custody Jurisdiction Act (UCCJA) in 1968. Patricia M. Hoff, *The ABC's of the UCCJEA: Interstate Child–Custody Practice Under the New Act*, 32 Fam. L.Q. 267, 267 n. 2 (1998). The UCCJA together with the Parental Kidnapping Prevention Act

(PKPA) governed the vast majority of interstate child custody disputes prior to the passage of the UCCJEA. Angela R. Arkin, *The Uniform Child Custody Jurisdiction Enforcement Act: Part I*, 29 Colo. Law. 73, 73 (Sept.2000).

¶ 20 The UCCJA spelled out four grounds for a state to take jurisdiction of a child custody order but did not specify any priority among them, nor provide concrete guidance for determining when the state that originally entered the decree had lost jurisdiction.[3] *Id.* This, combined with state-to-state textual differences in the adoption of the UCCJA, led to widely varying results in interstate jurisdictional cases. *Id.; Hoff, supra*, at 272.

¶ 21 Passed by Congress in 1981, the PKPA attempted to remedy the lack of jurisdictional priority by giving preference to the "home state," or the state in which the child lived with a parent for six consecutive months prior to the commencement of the custody proceeding. 28 U.S.C. § 1738A(b)(4) (2006). Moreover, the PKPA aimed to "extend the requirements of the Full Faith and Credit Clause to custody determinations." *Thompson v. Thompson*, 484 U.S. 174, 183, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988). Under the PKPA, the original determination state retains jurisdiction to modify its own custody orders, to the exclusion of other states, so long as it "remains the residence of any child or contestant." 28 U.S.C. § 1738A(d). Thus, a court cannot modify an out-of-state child custody order unless the original state loses, or declines to exercise, its continuing jurisdiction. 28 U.S.C. § 1738A(f).

¶ 22 Unfortunately, the PKPA did not end interstate jurisdictional conflict as some courts found that the issuing state could be divested of jurisdiction under the UCCJA by the child and one parent's move out of state, even if the other parent remained there. Arkin, *supra*, at 73. Moreover, if all parties had left the issuing state, the four equal grounds of jurisdiction under the UCCJA would again determine whether a new state

had acquired jurisdiction to modify the custody order. *Id.*

¶ 23 NCCUSL drafted the UCCJEA to remedy the inconsistencies between the UCCJA and the PKPA. 9 West's U. Laws Ann. (1999) UCCJEA, Pref. Note, 652. Several distinctions between the UCCJEA and its predecessor are applicable to the issue in this case. First, the UCCJEA, like the PKPA, prioritizes home state jurisdiction in initial custody determinations. *Id.* at 650. Second, the UCCJEA clearly enunciates that the original decree state retains exclusive continuing jurisdiction over its custody orders. *Id.* at 651. Third, where the UCCJA allowed courts to take into account the best interests of the child in determining jurisdiction, the UCCJEA rejects that analysis in order to avoid injecting the merits of a custody dispute into the determination of jurisdiction. *Id.* at 652.

### 1. Initial Jurisdiction

¶ 24 Under the UCCJEA, codified in Colorado at sections 14–13–101 to –403, and in Maryland at Md.Code Ann., Fam. Law tit. 9.5 (West 2011),[4] a court has jurisdiction to make an initial child custody order in four situations, only one of which is relevant here. Initial jurisdiction is proper where the state is the home state of the child on the date of the commencement of the proceeding. § 14–13–201(a). "Home State," in turn, is defined as "the state in which a child lived with a parent … for at least six consecutive months immediately before the commencement of a child-custody proceeding." § 14–13–102(7)(a). The UCCJEA prioritizes the jurisdiction of the home state to make an initial child custody determination, though it provides other jurisdictional grounds if there is no home state or if the home state declines to exercise jurisdiction on the grounds that another state would be a more appropriate forum. § 14–13–201.

### 2. Exclusive Continuing Jurisdiction

¶ 25 Once a state enters an initial child custody determination, that state has exclu-

---

**3.** For convenience, we refer to the state that entered the original custody decree as the "issuing state" or the "original determination state."

**4.** For the sake of clarity and brevity, all citations will be to the Colorado codification of the UC-CJEA.

sive jurisdiction to modify the determination provided that initial jurisdiction was proper. § 14–13–202(1). Exclusive jurisdiction continues until:

(a) A court of [the issuing] state determines that the child, the child's parents, and any person acting as a parent do not have a significant connection with [the issuing] state and that substantial evidence is no longer available in [the issuing] state concerning the child's care, protection, training, and personal relationships; or

(b) A court of [the issuing] state or a court of another state determines that the child, the child's parents, and any person acting as a parent *do not presently reside* in [the issuing] state.

§ 14–13–202(1)(a)–(b) (emphasis added).

¶ 26 It is clear from the statute that only a court of the issuing state can decide that it has lost jurisdiction due to erosion of a "significant connection" between the child and the state. § 14–13–202(1)(a). However, it is equally clear that a court in either the issuing state or any other state may divest the issuing state of jurisdiction by making a determination that the child and both parents do not "presently reside" there. § 14–13–202(1)(b).

¶ 27 Thus, although a child's home state may change within the meaning of the UCCJEA provision regarding jurisdiction to enter an initial custody order, the issuing state nevertheless may not be divested of exclusive continuing jurisdiction by any other state unless no party presently resides in the issuing state. *Id.* This provision tracks the PKPA and helps ensure that parents do not have an incentive to take their child out-of-state in order to re-litigate the issue of custody. *See Thompson,* 484 U.S. at 180, 108 S.Ct. 513 (discussing the congressional intent behind the PKPA).

### 3. Modification

¶ 28 A state may modify the custody order of another state only if it would have jurisdiction to make an initial determination, and either:

(a) The court of the [issuing] state determines that it no longer has exclusive, continuing jurisdiction under [section 14–13–202] . . . or that a court of the [new] state would be a more convenient forum . . . ; *or*

(b) A court of the [issuing] state or a court of the [new] state determines that the child, the child's parents, and any person acting as a parent *do not presently reside* in the [issuing] state.

§ 14–13–203(1)(a)–(b) (emphasis added). The issue of modification thus tracks the issue of exclusive continuing jurisdiction: the new state may modify only if it has jurisdiction to make an initial custody order, *and* if the issuing state decides that it has lost exclusive continuing jurisdiction pursuant to section 14–13–202 or either state determines that no party presently resides in the issuing state.[5] *Id.* The issuing state may also decline to exercise its jurisdiction on the grounds that the new state would be a more convenient forum to hear a modification proceeding. §§ 14–13–203, –207. If a new state enters a modification order, that state then assumes exclusive continuing jurisdiction over determinations of child custody. § 14–13–202(1) ("[A] court . . . that has made a child custody determination consistent with section 14–13–201 or 14–13–203 has exclusive, continuing jurisdiction over the determination. . . .").

### 4. The Appropriate Procedure for Determining Where the Parents and the Child "Presently Reside"

¶ 29 Although there is no Colorado case on point, cases from other jurisdictions strongly suggest that more than a perfunctory determination of residence is required to divest an issuing state of jurisdiction. In a 2006 New Mexico case, the court affirmed that the UCCJEA "specifically requires action" by the state of potential modification before exclusive continuing jurisdiction in the issuing state ceases. *State of N.M. ex rel. CYFD v. Donna J.,* 139 N.M. 131, 129 P.3d 167, 171 (2006). The court held that "[a]n automatic loss of jurisdiction, without any factual determination, would add uncertainty, diminish

---

5. Although not relevant to this case, a new state may also modify a child-custody order if it as-

sumes temporary emergency jurisdiction as provided for in section 14–13–204.

oversight ability of the courts, and increase conflicts between the states." *Id.*

¶ 30 Similarly, the Montana Supreme Court held in 2008 that Montana, the issuing state, had lost jurisdiction only after a Pennsylvania court had conducted "hearings" on the matter of where the parties presently resided and determined, based on "ample evidence," that the parties no longer resided in Montana. *In re A.B.A.M.*, 322 Mont. 406, 96 P.3d 1139, 1143 (2004).

¶ 31 In 2009, a California court held, emphasizing the necessity for a probing examination of the jurisdictional question:

> The requirement of a judicial determination under the UCCJEA is more than a procedural technicality. It reflects a deliberate effort to provide a clear end-point to the decree state's jurisdiction, to prevent courts from treading on one another's jurisdiction, and to ensure that custody orders will remain fully enforceable until a court determines they are not.

*In re Marriage of Nurie,* 176 Cal.App.4th 478, 98 Cal.Rptr.3d 200, 221 (2009).

¶ 32 The UCCJEA requires a "clear end-point to the decree state's jurisdiction." *In re Marriage of Nurie,* 98 Cal. Rptr.3d at 221. Only a state that has made a child custody decree "consistent" with § 14–13–201 (the provision for initial jurisdiction) or –203 (the provision for modification jurisdiction) is entitled to exclusive continuing jurisdiction. *See* § 14–13–202. Therefore, it is imperative that an out-of-state court tasked with enforcing a custody order has a clear factual record, either by stipulation or from the taking of evidence, on which to assess whether jurisdiction was properly asserted by the court which entered the order.[6]

¶ 33 A plaintiff typically "bears the burden of proving that the trial court has jurisdiction to hear the case." *Lee v. Banner Health,* 214 P.3d 589, 594 (Colo.App.2009). Because, under the UCCJEA, a new state may not modify an out-of-state child custody order unless it properly finds that the issuing state has been divested of jurisdiction (or declined to exercise it), the parent petitioning the new state to assume jurisdiction bears the burden of proving, not only that the new state would have jurisdiction to enter an initial child custody order, but that the issuing state has lost or declined to exercise jurisdiction as well.

¶ 34 Communication between the courts as authorized in sections 14–13–110 to –112 is exceedingly beneficial in this type of proceeding. Inter-court communication facilitates an understanding between sister states regarding whether the issuing state has lost jurisdiction pursuant to section 14–13–202(1)(a)–(b) or –203(1)(a)–(b), or declined to exercise jurisdiction in favor of a more convenient forum pursuant to section 14–13–207. Such communication alerts the issuing state to a potential loss of exclusive continuing jurisdiction, based on residence, before the new state assumes jurisdiction to modify the issuing state's child custody order. It also alerts the new state to any pending actions in the issuing state and helps to develop a factual record in the matter of jurisdiction.

¶ 35 We therefore determine that, before a court of this state may assume jurisdiction to modify an out-of-state custody order, the court must communicate with the issuing state pursuant to sections 14–13–110 to –112, conduct a hearing at which both sides are allowed to present evidence if there is a factual dispute on the residency issue, with the burden of proof being on the parent who has petitioned for the court to assume jurisdiction, following which the district court in our state makes its findings of fact, conclusions of law, and order.

### 5. Totality of Circumstances Test for "Presently Reside"

¶ 36 We interpret sections 14–13–202 and –203, the provisions of the UCCJEA upon which the court below will determine whether it has jurisdiction to modify the Maryland child custody order. We construe

---

**6.** In *In re A.B.A.M.,* the Montana Supreme Court relied heavily on the record developed during hearings on the issue of residence before the Pennsylvania court to determine that Pennsylvania had properly found that the party in question no longer resided in Montana. 96 P.3d at 1142–43.

statutes to avoid absurd results. *Lagae v. Lackner*, 996 P.2d 1281, 1284 (Colo.2000).

■ ¶ 37 We first stress that, for purposes of modification jurisdiction, only the state that originally entered the custody order may decide that another forum would be more convenient. *See* § 14–13–203(1)(a). Second, while the UCCJEA for some purposes does prioritize the "home state"—the state where the child lived for the six months prior to the custody determination—this preference pertains only to jurisdiction to enter an initial child custody order, not jurisdiction to modify an order that has already been entered by another state. "Home state" preference at the modification stage would defeat the purposes of exclusive continuing jurisdiction, which are to ensure that custody orders, once entered, are as stable as possible and to discourage parents from establishing new "home states" for their children so as to re-litigate the issue of custody in a friendlier forum. *See Thompson*, 484 U.S. at 180, 108 S.Ct. 513 (discussing the congressional intent behind the PKPA, with which the UCCJEA provision is meant to be consistent).

¶ 38 Absent action by Maryland disclaiming exclusive continuing jurisdiction or declining to exercise it, the only basis for Colorado to divest Maryland of jurisdiction is to determine that "the child, the child's parents, and any person acting as a parent do not presently reside" there. § 14–13–202(1)(b), – 203(1)(b).

¶ 39 Unfortunately, comment 2 to section 14–13–202 [7] has confused construction of the operative statutory term "presently reside" and has led to a split among states in applying the act. This comment states, in part:

Continuing jurisdiction is lost when the child, the child's parents, and any person acting as a parent no longer reside in the original decree State.... It is the intention of this Act that [the phrase, 'do not presently reside'] means that the named persons *no longer continue to actually live within the State.* ... [W]hen the child, the parents, and all persons acting as parents *physically leave the state to live elsewhere,* the exclusive continuing jurisdiction ceases.

The phrase "do not presently reside" is *not used in the sense of technical domicile.* The fact that the original determination State still considers one parent a domiciliary does not prevent it from losing exclusive, continuing jurisdiction after the child, the parents, and all persons acting as parents have moved from the state.

§ 14–13–202, cmt. 2 (emphasis added). Based on this commentary, some states take the view that a person resides only where physically present when a petition for assumption of modification jurisdiction is filed. In *Staats v. McKinnon,* the Tennessee court of appeals concluded that the "sole question is whether the relevant individuals 'continue to actually live within the state' or have 'physically left the state to live elsewhere.'" 206 S.W.3d 532, 549 (Tenn.Ct.App.2006) (quoting the Tennessee codification of the UCCJEA, Tenn.Code Ann. § 36–5–217 cmt. (West 2011)). Relying on the same language, the Tennessee court also held in a separate case that, although one of the litigants maintained a residence, nursing license, driver's license, and voting registration in Arkansas and paid Arkansas state taxes, she nonetheless did not "presently reside" in Arkansas because she was, albeit temporarily, physically residing in Tennessee on the date the action commenced. *Highfill v. Moody,* 2010 WL 2075698, at *12 (Tenn.Ct.App. May 25, 2010).

¶ 40 A Pennsylvania court has defined "residence" as "living in a particular place, requiring only physical presence." *Wagner v. Wagner,* 887 A.2d 282, 287 (Pa.Super.Ct.2005). The court held that, for UCCJEA purposes, a parent presently resided in New Jersey, where she had been assigned by the Army, notwithstanding that she retained a Florida mailing address, driver's license, and voter registration.

■ ¶ 41 However, cases from other jurisdictions disagree that "presently reside"

---

**7.** The comments refer to the official comments written by NCCUSL at the time it drafted the UCCJEA.

means only physical presence. In 2009, a California court of appeal found that the relevant question under the UCCJEA was "not whether Husband 'resided' in Pakistan, but whether he *stopped* residing in California." [8] *In re Marriage of Nurie*, 98 Cal. Rptr.3d at 219. Additionally, the court rejected the wife's construction of the word "presently":

> Wife insists that the term "presently" must be given effect in the statute, and that it means continuing jurisdiction may be lost based on where the parties are "actually living" regardless of their volition or intent. *We perceive a different significance to the word "presently,"* namely that the determination of relocation must be made during the period of nonresidence in the decree state.

*Id.* (emphasis added). The court concluded that, because it is well established that a party may have more than one residence, the husband could have "presently resided" in Pakistan at the time the Pakistan court asserted jurisdiction while "still maintaining a 'present residence' in California." *Id.* at 220. The court held that, since the husband maintained a functioning home, car, telephones, and fax in California and was employed there, he continued to "presently reside" there. *Id.* Thus, California (the issuing state) retained jurisdiction. *Id.*

¶ 42 Similarly, in *Russell v. Cox*, a South Carolina court was tasked with determining whether South Carolina had jurisdiction to modify a Georgia custody decree where the mother resided in Florida and the father and child resided in South Carolina. 383 S.C. 215, 678 S.E.2d 460 (App.2009). The court concluded that Georgia had not lost jurisdiction because the father, "notwithstanding significant evidence that he currently resided in South Carolina, was still a resident of Georgia as well." *Id.* at 462. Underlying the court's reasoning was evidence that the father owned real estate in Georgia, was registered to vote there, held a Georgia driver's license, was paid as a Georgia resident, and paid Georgia state taxes. *Id.*

¶ 43 We agree that, for UCCJEA purposes, the term "presently reside" does not equal "technical domicile." *See* § 14–13–202, cmt. 2. The reference to "technical" domicile suggests that "presently reside" means something other than meeting the technical requirements of domicile for specific purposes, including, for example, the obligation to pay state taxes. Instead, "presently reside" necessitates a broader inquiry into the totality of the circumstances that make up domicile—that is, a person's permanent home to which he or she intends to return to and remain. *Black's Law Dictionary* at 558 (9th ed.2009).

¶ 44 Residency provisions contained in other Colorado statutes provide guidance for what factors should be considered in making the totality of the circumstances determination. Those statutes include section 1–2–102, C.R.S. (2011) addressing voter registration, section 13–71–105(1) & (2)(e) addressing jury service, and section 14–10–131.3 addressing reserve and active military service. *See generally People v. White*, 242 P.3d 1121, 1123–25 (Colo.2010). While those statutes do not specifically address the term "presently reside" in section 14–13–202(1)(b), which itself contains no definition, we conclude that factors to be weighed in making the residency determination under section 14–13–202(1)(b) and –203(1)(b), a mixed question of fact and law, include but are not limited to the length and reasons for the parents' and the child's absence from the issuing state; their intent in departing from the state and returning to it; reserve and active military assignments affecting one or both parents; where they maintain a home, car, driver's license, job, professional licensure, and voting registration; where they pay state taxes; the issuing state's determination of residency based on the facts and the issuing state's law; and any other circumstances demonstrated by evidence in the case.

¶ 45 The statutory language of sections 14–13–202(1)(b) and –203(1)(b) is clear that, be-

---

**8.** California was the original decree state; Pakistan was the modification state. A foreign country is treated as a state of the United States for purposes of determining jurisdiction under the UCCJEA. *In re Marriage of Nurie*, 98 Cal. Rptr.3d at 212.

fore a new state can divest the issuing state of jurisdiction, the new state must *"determine[ ]* that the child, the child's parents, and any person acting as a parent *do not presently reside* " in the issuing state. (Emphasis added). This statutory requirement for determination is consistent with the UCCJEA's emphasis on the primacy of exclusive continuing jurisdiction as a means to ensure the stability of custody orders and to discourage parental kidnapping. To hold that the term "presently reside" means only physical presence would undercut the actual statutory language and purpose that centers on exclusive continuing jurisdiction remaining in the issuing state unless that jurisdiction has been clearly divested, enabling the new state to assume jurisdiction.

¶ 46 In addition, such a construction of the statute would allow Parent A to move out of the issuing state with the child, establish a new home state for the child, and engage in a "race to the courthouse" by simply filing a petition for the new state to assume jurisdiction as soon as Parent B leaves the issuing state to physically live elsewhere for any length of time. Under this construction, the issuing state would lose jurisdiction if Parent B were temporarily out-of-state on vacation, in a hospital, or on military assignment.

¶ 47 In sum, we decline to adopt an interpretation of the statutory term "presently reside" which is confined only to "physical presence within the borders of the state whose jurisdiction is at·issue." *Russell,* 678 S.E.2d at 462.

### C. Application to this Case

■ ¶ 48 In the case before us, residency is a hotly contested issue. Christine Brandt alleges that she has constantly maintained a home, driver's license, nursing license, and voting registration in Maryland and pays Maryland state taxes. Indeed, under both federal and Colorado law, she cannot gain or lose residence for purposes of taxation and voting registration by virtue of her service in the armed forces. 50 U.S.C.A. app. §§ 571(a), 595(a) (West 2009); § 1–2–103,

C.R.S. (2011). Moreover, she received her orders to transfer back to Maryland on April 26, ten days *before* George Brandt filed the May 6 Petition. At that point, she contends, her return to Maryland was not just a matter of her intention; it was certain to occur.

¶ 49 The portion of the May 25 Order divesting Maryland of jurisdiction reads, in its entirety, as follows: "the Court finds that neither the child nor the child's parents currently reside [9] in Maryland and the child has resided in Colorado for more than a year before the filing of the petition. As a result, this Court assumes jurisdiction for purposes of modifying the Maryland child-custody determination."

¶ 50 While George Brandt argues that he and the child have significant contacts with Colorado, it is clear that the district court did not have the benefit of the legal test we articulate in this opinion. Its order assuming jurisdiction to modify Maryland's custody decree cannot stand because that order appears to be based solely on Christine Brandt being out of Maryland on military assignment. The UCCJEA provision allowing Colorado to divest Maryland of jurisdiction based on where the parties "presently reside" should not be interpreted to allow one parent to re-litigate the issue of custody simply by winning the race to the courthouse when the other parent is absent from the issuing state.

¶ 51 Our role does not include fact finding. On remand, as the petitioning party, George Brandt bears the burden of proving that Maryland has lost exclusive continuing jurisdiction and that Colorado may assume it. If the facts are still in dispute, the district court should afford the parties an opportunity to present additional evidence and argument in light of our decision, and engage in additional consultation with the Maryland court regarding the factual and legal issues concerning Maryland residency and the Maryland court's jurisdiction.

9. The district court's use of the phrase "currently reside" departs from the statutory term "presently reside."

## III.

¶ 52 Accordingly, we make our rule absolute, vacate the district court's order assuming jurisdiction, and return this case to the district court for further proceedings consistent with this opinion.