*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JASON MOURITSEN, | ) |
| | ) Supreme Court No. S-17401 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-15-05986 CI |
| v. | ) |
| | ) O P I N I O N |
| JULIA MOURITSEN, n/k/a JULIA | ) |
| TAUBERT, | ) No. 7428 – March 13, 2020 |
| | ) |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Yvonne Lamoureux, Judge.

Appearances: Jason Mouritsen, pro se, Sumter, South Carolina, Appellant. Robin A. Taylor, Law Office of Robin Taylor, Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

BOLGER, Chief Justice.

## I.    INTRODUCTION

A mother filed a motion for clarification, arguing that Alaska no longer had exclusive, continuing jurisdiction over a child custody order under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) after she, her ex-husband, and their two children lived in South Carolina for over a year. The father objected, arguing

that he was still a resident of Alaska and he intended to return to Alaska after his service in the Air Force. The superior court found that it did not have exclusive, continuing jurisdiction over its initial custody order because neither the parents nor the children presently resided in Alaska. The court also suggested that substantial evidence related to custody existed in South Carolina, and therefore it was likely the more appropriate forum.

We conclude that it was an error for the superior court to find that it no longer had exclusive, continuing jurisdiction under the UCCJEA based on the parties' physical presence in South Carolina. Additionally, because the parties and the court did not have a full opportunity to address all of the relevant UCCJEA forum non conveniens factors, we cannot review the court's jurisdictional ruling on this ground. We therefore vacate the superior court's orders on jurisdiction and remand for further proceedings.

## II.    FACTS AND PROCEEDINGS

Jason Mouritsen and Julia Taubert have two daughters, born in 2005 and 2008. In November 2016 the superior court entered a divorce decree and custody order providing for shared legal custody of their daughters. The court ordered the parties to share physical custody equally if they lived in the same community and gave Mouritsen primary physical custody if they lived a "significant distance apart." Mouritsen was transferred to Shaw Air Force Base in South Carolina in 2017. Taubert moved to South Carolina to maintain shared physical custody under the order.

In fall 2018, while living in South Carolina, Mouritsen and Taubert disputed who would have the children over Thanksgiving break. Mouritsen filed a motion with the superior court to enforce a request for vacation time. When Taubert's attorney failed to oppose the motion in time, the court granted Mouritsen's request. The

court found that it retained jurisdiction to enforce its custody order, noting that "[t]here is also no indication that the Child Custody Order has been registered in South Carolina."[1]

## A.    Taubert's Motion To Clarify

Taubert filed a motion to clarify the order.  In addition to requesting clarification on the dates of vacation custody, Taubert informed the superior court that she had registered the 2016 child custody order in South Carolina several months earlier. She alleged that "[t]he children have lived there for over 1.5 years, attend school there and continue to be in counseling there" and that "[t]hey have no family and no remaining contacts in Alaska."  Taubert argued that under these circumstances, the Alaska court no longer had jurisdiction to enforce the custody order.

Mouritsen opposed this motion, arguing that registration of an out-of-state custody order for its enforcement does not result in a change in jurisdiction.  He additionally argued that the Alaska court retained jurisdiction, and it would be inappropriate for a South Carolina court to modify the Alaska custody order when he remained an Alaska resident and would be retiring to Alaska with the children in 2019.

In Taubert's reply to Mourtisen's opposition, she presented a new argument that pursuant to AS 25.30.360 "[e]ven if this court felt it retained jurisdiction, it should decline to exercise that jurisdiction in favor of South Carolina being a more convenient

---

[1]    Earlier that year, while all of the parties were living in South Carolina, Taubert and Mouritsen disputed how the custody order applied to his temporary deployments.  Mouritsen filed a motion to enforce the custody order.  The court came to the conclusion that it "retained jurisdiction to enforce that Order," and issued an order enforcing the custody agreement.

forum."[2]  She asserted that all recent evidence related to the children's education and medical care was located in South Carolina.

The superior court entered an order in January 2019, concluding that it did "not have exclusive, continuing jurisdiction under AS 25.30.310" because "neither the children, nor either parent, presently resides in Alaska, and . . . they have all been living in South Carolina for over a year."  The court noted that Taubert had registered the custody order and filed a motion to modify in South Carolina.  The court also observed that "[i]t appears that South Carolina is a more appropriate forum to consider the motion to modify custody, with the best evidence concerning the children's care, protection, training, and personal relationships being available in South Carolina."  It further stated "In addition, under AS 25.30.310(b), this Court may modify custody now only if it has jurisdiction to make an initial determination under AS 25.30.300, which it does not have."

B.  **Mouritsen's Motion For Reconsideration**

Mouritsen filed a motion for reconsideration, arguing that he continued to reside in Alaska and that his time in South Carolina was a temporary absence on military orders.  He also argued that South Carolina was not a more convenient forum because there was still substantial evidence about the children and their relationships in Alaska, he intended to retire to Alaska with the children in late 2019, and moving the case to South Carolina would result in further delays because of that state's alternative dispute resolution requirement.

---

[2]  *See* AS 25.30.360(a) (requiring court to have jurisdiction to make inconvenient forum determination).

The superior court requested Taubert's response, and eventually denied Mouritsen's motion for reconsideration. It concluded that "[w]hile Mr. Mouritsen and the children may be considered residents of Alaska for tax purposes, vehicle and voter registration, or for purposes of obtaining the Alaska Permanent Fund Dividend, none of them 'presently resides in this state.' " The court explained that it did not consider the 21 months that Mouritsen, Taubert, and the children had spent in South Carolina to be a "temporary absence," despite Mouritsen's "intent to return to Alaska upon his retirement."[3] The court reasoned:

> The children have been going to school in South Carolina and they have been treated by medical providers in South Carolina since they moved there. Both parties have been working and living in South Carolina since they moved there. The court is unaware of factual disputes [related to jurisdiction] that would warrant an evidentiary hearing.

Mouritsen appeals.

## III.   STANDARD OF REVIEW

Whether a court has jurisdiction under the UCCJEA to modify a child custody order is a question of law that we review de novo.[4] Compliance with the

---

[3]   Mouritsen's intention to retire in Alaska had been clear since the creation of the custody order in 2016.

[4]   *Berry v. Coulman*, 440 P.3d 264, 269 (Alaska 2019) ("Whether a court has jurisdiction to modify a child support order presents a question of subject matter jurisdiction, which is a question of law we review de novo."); *Fox v. Grace*, 435 P.3d 883, 885 (Alaska 2018) ("Whether a court can exercise jurisdiction under the UCCJEA is a question of law, which we review de novo." (quoting *Steven D. v. Nicole J.*, 308 P.3d 875, 879 (Alaska 2013))).

procedural requirements of AS 25.30.360 is subject to our independent judgment.[5]

## IV.    DISCUSSION

### A.    The Superior Court Had Exclusive, Continuing Jurisdiction Because We Define "Presently Resides" In AS 25.30.310(a)(2) To Mean "Domicile."

Mouritsen raises 14 points on appeal, many of which are arguments that the superior court's denial of jurisdiction was erroneous.  His main contention is that the superior court erroneously declined jurisdiction by concluding that he did not "presently reside" in Alaska.  Mouritsen challenges the superior court's interpretation of the term "presently resides" in AS 25.30.310(a)(2).

The superior court interpreted "presently resides" to mean living in the state, while Mouritsen argues that, under AS 01.10.055, he "presently resides" in the state through his continued Alaska residency.  He asserts that "[h]e established his residency by being physically present in the state for almost 10 years with the intent to remain indefinitely and make a home in the state."  Furthermore, he notes that his demonstrated "intention to retire in Alaska and remain an Alaska resident has never wavered."  He asserts he "never established or claimed residency in South Carolina" and Alaska is "his state of residency on his pay stubs, income tax returns, voter's registration, car registrations (including vehicles purchased while in South Carolina), driver's license, and receipt of PFD."

---

[5]      *Mikesell v. Waterman*, 197 P.3d 184, 186-87 (Alaska 2008) (citing *Acevedo v. Burley*, 944 P.2d 473, 476 n.2 (Alaska 1997)) (reviewing decision not to hold an evidentiary hearing for inconvenient forum motion using independent judgment).

Under AS 25.30.310(a)(2) a court maintains exclusive, continuing jurisdiction over a custody determination until a court "determines that neither the child, nor a parent . . . presently resides in this state." In full, AS 25.30.310(a)(2) provides:

> (a)    Except as otherwise provided in AS 25.30.330, a court of this state that has made a child custody determination consistent with AS 25.30.300 or 25.30.320 has exclusive, continuing jurisdiction over the determination until
>
> . . .
>
> (2)    a court of this state or a court of another state determines that neither the child, nor a parent, nor a person acting as a parent *presently resides* in this state.[6]

To address Mouritsen's argument that the denial of jurisdiction was erroneous, we must determine whether the statute supports his interpretation of "presently resides." "Presently resides" is not defined in Alaska's version of the UCCJEA,[7] nor have we defined it. "When we engage in statutory interpretation '[w]e interpret the statute "according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose . . ." ' "[8] Additionally, "we apply 'a sliding scale approach, where "[t]he plainer the statutory

---

**6**    AS 25.30.310(a)(2) (emphasis added).

**7**    *See* AS 25.30.909. Although the UCCJEA is a "uniform" multi-state statute, we are applying Alaska's version of the statute. AS 25.30.300-.390.

**8**    *Berry v. Coulman*, 440 P.3d 264, 270 (Alaska 2019) (alteration in original) (quoting *Reasner v. State, Dep't of Health & Social Servs., Office of Children's Servs.*, 394 P.3d 610, 617 (Alaska 2017)).

language is, the more convincing the evidence of contrary legislative purpose or intent must be." ' "[9]

We begin our analysis by noting that Mouritsen's interpretation of "presently resides" in AS 25.30.310(a)(2) would make this provision of the UCCJEA equivalent to "residency" under Alaska law. Alaska's definition of "residency" in AS 01.10.055 takes a holistic approach including a person's intent to remain and make a home in the state:

> (a) A person establishes residency in the state by being physically present in the state with the intent to remain in the state indefinitely and to make a home in the state.
>
> (b) A person demonstrates the intent required under (a) of this section
>
> > (1) by maintaining a principal place of abode in the state for at least 30 days or for a longer period if a longer period is required by law or regulation; and
> >
> > (2) by providing other proof of intent as may be required by law or regulation, which may include proof that the person is not claiming residency outside the state or obtaining benefits under a claim of residency outside the state.
>
> (c) A person who establishes residency in the state remains a resident during an absence from the state unless during the absence the person establishes or claims residency in another state, territory, or country, or performs other acts or is absent under circumstances

---

[9] *Id.* (quoting *Reasner*, 394 P.3d at 617 (alteration in original)).

that are inconsistent with the intent required under (a)
of this section to remain a resident of this state.

The definition of "residency" provided in AS 01.10.055 is part of a series of general definitions and rules of statutory construction that are meant to apply to Alaska statutes unless they "would be inconsistent with the manifest intent of the legislature."[10] Nothing in the language or legislative history surrounding the Alaska legislature's adoption of the UCCJEA[11] indicates an intent to depart from this definition of "residency," which focuses on a person's intent to remain within the state. Thus "presently resides" should be interpreted by reference to the definition of "residency" under AS 01.10.055.

We continue our analysis by examining the history and purposes of the UCCJEA. In discussing the motivations for the UCCJEA, courts have observed that "[t]he increasing mobility of society has made the issue of child custody jurisdiction and modification progressively more contentious."[12] Under the previous Uniform Child Custody Jurisdiction Act (UCCJA), there was "interstate jurisdictional conflict" because "the issuing state could be divested of jurisdiction . . . by the child and one parent's move

---

[10]     AS 01.10.020.

[11]     AS 25.30.300-.390.

[12]     *Brandt v. Brandt*, 268 P.3d 406, 410-11 (Colo. 2012) (en banc); *see also In re Marriage of Nurie*, 98 Cal. Rptr. 3d 200, 221 (Cal. App. 2009) (noting UCCJEA "reflects a deliberate effort to provide a clear end-point to the decree state's jurisdiction, to prevent courts from treading on one another's jurisdiction, and to ensure that custody orders will remain fully enforceable until a court determines they are not.").

out of state."[13] A parent dissatisfied with the custody order of one state thus had an incentive under the UCCJA to move with the child to another state to establish jurisdiction in a new forum.

Broadly speaking, the purposes of the UCCJEA are to address concerns about forum-shopping, abduction of children, and relitigation, which can be especially disruptive and harmful to children involved in custody disputes.[14] The comment to UCCJEA section 101 explains that the Act should be interpreted according to its six purposes:

> (1)    Avoid jurisdictional competition and conflict with courts of other States in matters of child custody which have in the past resulted in the shifting of children from State to State with harmful effects on their well-being;
>
> (2)    Promote cooperation with the courts of other States to the end that a custody decree is rendered in that State which can best decide the case in the interest of the child;
>
> (3)    Discourage the use of the interstate system for continuing controversies over child custody;
>
> (4)    Deter abductions of children;

---

[13]    *Brandt*, 268 P.3d at 411 (citing Angela R. Arkin, *The Uniform Child Custody Jurisdiction Enforcement Act:  Part I*, 29 COLO. LAW. 73, 73 (2000)); *see also Steven D. v. Nicole J.*, 308 P.3d 875, 881-82 (Alaska 2013) ("UCCJEA was enacted to resolve conflicting jurisdictional requirements between states.").

[14]    *See, e.g.*, Kevin Wessel, *Home is Where the Court is:  Determining Residence for Child Custody Matters Under the UCCJEA*, 79 U. CHI. L. REV. 1141, 1142 (2012).

(5)    Avoid relitigation of custody decisions of other States in this State;

(6)    Facilitate the enforcement of custody decrees of other States[.][15]

Courts in other states have reached conflicting conclusions about how to define "presently resides" in UCCJEA section 202(a)(2) in light of the Act's purposes and commentary.[16] These inconsistent conclusions are unsurprising. Comment 2 to UCCJEA section 202(a)(2) notes that "[t]he exact language of subparagraph (a)(2) was the subject of considerable debate."[17] Unfortunately, this comment seems to have done more to confuse, rather than clarify, the interpretation of the term "presently resides."[18] The comment does not define what it means to "reside" in a state.[19] A particularly divisive portion of the comment explains that "[i]t is the intention of this Act that paragraph (a)(2) of this section means that the named persons no longer *continue to*

---

[15]    UNIF. CHILD CUSTODY JURISDICTION & ENF'T ACT § 101 cmt., 9 U.L.A. 474 (1997) [hereinafter UCCJEA].

[16]    *See* MARIE FAHNERT & MÉLYSE MPIRANYA, CHILD-CUSTODY JURISDICTION: THE UCCJEA & PKPA 31 (2015) (citing cases reaching different conclusions on the meaning of "presently resides").

[17]    UCCJEA § 202 cmt. 2 at 511.

[18]    *See, e.g.*, *Brandt*, 268 P.3d at 414 ("Unfortunately, comment 2 . . . has confused construction of the operative statutory term 'presently reside' and has led to a split among states in applying the act.").

[19]    *See also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 11 cmt. k (AM. LAW INST. 1971) ("Residence is an ambiguous word whose meaning in a legal phrase must be determined in each case."); Wessel, *supra* note 13, at 1143 ("In short, there is no accepted definition of 'residence' and little case law on which to rely.").

*actually live within the State*," and "[t]he phrase 'do not presently reside' is not used in the sense of a *technical domicile*."[20] As a result of this language in the comment, some courts have found that "presently resides" must mean "physical presence."[21]

But Comment 2 also directs that "presently resides" in the UCCJEA should be interpreted as the equivalent of "continues to reside" in the Uniform Interstate Family Support Act (UIFSA).[22] In *Berry v. Coulman* we held that under the UIFSA, the term "residence" means "domicile."[23] In reaching our conclusion in *Coulman*, we considered possible meanings of the term "residence," including both "physical presence" and "domicile."[24] And we examined the reasoning of other courts that have grappled with the challenge of determining the meaning of "residence" for purposes of the UIFSA.[25] We ultimately agreed with the analysis of the California Court of Appeals that "residence" should not be defined as "physical presence" because the UIFSA's purposes include ensuring uniform treatment of child support orders in different states and

---

[20]    UCCJEA § 202 cmt. 2 at 511-12 (emphasis added).

[21]    *See, e.g.*, *Staats v. McKinnon*, 206 S.W.3d 532, 549 (Tenn. App. 2006) (discussing the comment to Tennessee Code § 36-6-217, Tennessee's version of the UCCJEA).

[22]    UCCJEA § 202 cmt. 2 at 511 ("The phrase is also the equivalent of the language 'continues to reside' which occurs in UIFSA § 205(a)(1) to determine the exclusive, continuing jurisdiction of the State that made a support order.").

[23]    440 P.3d 264, 271 (Alaska 2019).

[24]    *Id.* at 270 ("The term [residence] is not defined elsewhere in the child support statutes.").

[25]    *Id.* at 270-71.

providing exclusive jurisdiction based on residence.[26] We concluded that "domicile" was the correct interpretation.

We share the concern cited by courts in several other states that an interpretation conflating the phrase "presently resides" with "physical presence" would create additional jurisdictional instability in child custody disputes contrary to the purposes of the UCCJEA.[27] As explained by the Colorado Supreme Court, "the purposes of exclusive continuing jurisdiction . . . are to ensure that custody orders, once entered, are as stable as possible and to discourage parents from establishing new 'home states'

---

[26] *Id.* at 271 ("[U]nder the UIFSA, it is assumed that a person cannot have more than one residence. This, however, does not comport with the more general definition of residence noted above . . . . Instead, 'residence,' for the purpose of the UIFSA, must mean 'domicile,' of which there can be only one." (alterations in original) (quoting *In re Marriage of Amezquita & Archuleta*, 124 Cal. Rptr. 2d at 890 (Cal. App. 2002))).

[27] *See, e.g.*, *Brandt v. Brandt*, 268 P.3d 406, 410 (Colo. 2012) (involving the very situation the UCCJEA was trying to prevent — two states asserting jurisdiction over a custody order — based on the understanding of "presently reside" as "physical presence"); *In re Marriage of Nurie*, 98 Cal. Rptr. 3d 200, 219 (Cal. App. 2009) (interpreting "presently reside" to mean continuously maintaining a residence in California; physical presence out of state for prolonged periods did not mean parent had relocated); *Russell v. Cox*, 678 S.E. 2d 460, 462 (S.C. App. 2009) (stating court "did not believe the legislature intended that this term ['presently resides'] apply only to those situations in which all parties to the dispute are physically present within the borders of the state whose jurisdiction is at issue").

for their children to re-litigate the issue of custody in a friendlier forum."[28]  The court further reasoned:

> This statutory requirement for determination is consistent with the UCCJEA's emphasis on the primacy of exclusive continuing jurisdiction as a means to ensure the stability of custody orders and to discourage parental kidnapping.  To hold that the term 'presently reside' means only physical presence would undercut the actual statutory language and purpose that centers on exclusive continuing jurisdiction remaining in the issuing state unless that jurisdiction has been

---

[28]  *Brandt*, 268 P.3d at 414 (citing *Thompson v. Thompson*, 484 U.S. 174, 180 (1988)).  In *Thompson* the Supreme Court discussed similar concerns in the analogous context of the Parental Kidnapping Prevention Act (PKPA):

> [A] parent who lost a custody battle in one State had an incentive to kidnap the child and move to another State to relitigate the issue.  This circumstance contributed to widespread jurisdictional deadlocks like this one, and more importantly, to a national epidemic of parental kidnaping.  At the time the PKPA was enacted, sponsors of the Act estimated that between 25,000 and 100,000 children were kidnaped by parents who had been unable to obtain custody in a legal forum.

*Thompson*, 484 U.S. at 180-81 (citing *Parental Kidnapping Prevention Act of 1979: J. Hearing on S. 105 before the Subcomm. on Criminal Justice of the Judiciary Comm. and the Subcomm. on Child & Human Dev. of the Comm. on Labor & Human Res.*, 96th Cong., 2d Sess. 10 (1980) (statement of Sen. Malcolm Wallop)).  UCCJEA § 202(a)(2) used "presently resides" to be consistent with the PKPA.  UCCJEA § 202 cmt. 2 at 511 ("The phrase ['presently resides' in the UCCJEA] is meant to be identical in meaning to the language of the PKPA which provides that full faith and credit is to be given to custody determinations made by a State in the exercise of its continuing jurisdiction when that 'State remains the residence of . . . .' ").

clearly divested, enabling the new state to assume jurisdiction.[29]

The South Carolina Court of Appeals has followed a similar approach, holding that the relevant inquiry is whether the parent has relinquished residency in the state with exclusive, continuing jurisdiction.[30]  And as the California Court of Appeals has explained, a party may have more than one residence and "the crucial question under the [UCCJEA] is not whether Husband 'resided' [elsewhere], but whether he *stopped* residing in California."[31]

We agree with the California Court of Appeals that neither the only nor the best way to interpret the phrase "presently resides" is as "physical presence" in a state:

> Wife insists that the term "presently" must be given effect in the statute, and that it means continuing jurisdiction may be lost based on where the parties are "actually living," regardless of their volition or intent.  We perceive a different significance to the word "presently," namely that the

---

[29]     *Brandt*, 268 P.3d at 416.

[30]     *Russell*, 678 S.E. 2d at 462.

[31]     *In re Nurie*, 98 Cal. Rptr. 3d at 219 (emphasis in original) (interpreting California's version of the UCCJEA); *see also Brandt*, 268 P.3d at 416 (fearing situation in which "the issuing state would lose jurisdiction if [a] [p]arent were temporarily out-of-state on . . . military assignment").

determination of relocation must be made during the period of non-residence in the decree state.[32]

Under this understanding of "presently resides," "a parent's bare intent to return to the decree state may not be sufficient for retention of jurisdiction if he has otherwise moved from the state . . . ."[33] Rather it "necessitates an inquiry broader than 'technical domicile' into the totality of the circumstances that make up domicile — that is a person's permanent home to which he or she intends to return to and remain."[34] In this way, "technical domicile," meaning "meeting the technical requirements of domicile for specific purposes, including, for example, the obligation to pay state taxes," may be distinguished from a more holistic understanding of "domicile" — a permanent home with an intent to remain.[35]

We hold that the term "presently resides" should be interpreted consistently with "residency" under Alaska law.[36] This interpretation furthers the stated purposes of the UCCJEA and makes this provision of the UCCJEA consistent with the UIFSA. We

---

[32]     *In re Nurie*, 98 Cal. Rptr. 3d at 219-20 (footnote omitted) (citing *In re Marriage of Amezquita & Archuleta*, 124 Cal. Rptr. 2d 887, 890 (Cal. App. 2002)); *see also In re Amezquita*, 124 Cal. Rptr. 2d at 890 (noting "general definition of residence . . . allow[s] for multiple residences," but " 'residence' for the purpose of the UIFSA, must mean 'domicile,' of which there can be only one").

[33]     *In re Nurie*, 98 Cal. Rptr. 3d at 220.

[34]     *Brandt*, 268 P.3d at 410.

[35]     *Id.* at 415; *see also* UCCJEA § 202 cmt. 2 at 512 (explaining "[t]he phrase 'do not presently reside' is not used in the sense of a technical domicile.").

[36]     *See* AS 01.10.055(a) ("A person establishes residency in the state by being physically present in the state with the intent to remain in the state indefinitely and to make a home in the state.").

conclude that the superior court erred when it determined that it no longer had exclusive, continuing jurisdiction based on the parties' physical presence in South Carolina.

**B.    The Superior Court Did Not Engage In A Full Factual And Legal Analysis Of The Forum Non Conveniens Issue.**

Mouritsen argues that the superior court should have held an evidentiary hearing on the inconvenient forum issue, or, in the alternative, at least afforded him the opportunity to properly brief the issue. He notes that Taubert did not ask the court to "decline to exercise . . . jurisdiction in favor of South Carolina being a more convenient forum" until her reply to his opposition. Mouritsen asserts that he did not have an opportunity to respond to this argument at that point in the proceedings. He additionally argues that the court failed to consider all relevant factors in AS 25.30.360(b), which governs the forum non conveniens analysis.

If an Alaska court has jurisdiction over a custody proceeding, it may cede that jurisdiction under AS 25.30.360 if it "determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum."[37] Alaska Statute 25.30.360(b) lays out factors that a superior court should consider before determining that a forum is inconvenient for custody proceedings: Among these factors are the amount of time the child has lived outside the state, the location of relevant evidence, "the ability of the court of each state to decide the issue expeditiously," and the familiarity of each court with the case.[38] Because the superior court found that it did not have exclusive, continuing jurisdiction under AS 25.30.310(a)(2), it did not fully

---

[37]    AS 25.30.360(a); *see also Steven D. v. Nicole J.*, 308 P.3d 875, 883 (Alaska 2013).

[38]    AS 25.30.360(b)(2), (6)-(8).

consider whether Alaska would be a forum non conveniens, as that inquiry became irrelevant. The court only noted, "It appears that South Carolina is a more appropriate forum to consider the motion to modify custody, with the best evidence concerning the children's care, protection, training, and personal relationships being available in South Carolina."[39] The court therefore did not engage in a full factual and legal analysis of the forum non conveniens issue.

On remand the superior court could consider ceding jurisdiction under the forum non conveniens factors. If it does, both parties should be provided an opportunity to submit information on the inconvenient forum factors.

## V.     CONCLUSION

Based on the foregoing, we VACATE the superior court's orders on jurisdiction and REMAND for further proceedings.

---

[39]     *See* AS 25.30.360(b)(6) (considering "the nature and location of the evidence required to resolve the pending litigation"). Alaska Statute 25.30.360(a) provides that "[t]he issue of inconvenient forum may be raised on motion of a party, the court's own motion, or request of another court."