23CA2220 Peo in Interest of AR 12-19-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA2220
Fremont County Court No. 22JV30075
Honorable Kaitlin B. Turner, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.R., a Child,

and Concerning C.H.,

Appellant.

---

JUDGMENT AFFIRMED

Division A
Opinion by JUDGE GRAHAM*
Román, C.J., and Hawthorne*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 19, 2024

---

Eric Bellas, County Attorney, Sean Biddle, Assistant County Attorney, Canon City, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024

¶ 1    In this dependency and neglect proceeding, C.H. (mother) appeals the juvenile court's judgment adjudicating A.R. (the child) dependent or neglected. We affirm.

## I.    Background

¶ 2    In October 2022, the Fremont County Department of Human Services filed a petition in dependency and neglect regarding the then-eight-year-old child. The Department alleged that mother and the child were living out of their car and that the child was not attending school. The Department also alleged concerns about the child's suicidal ideations and the possibility of physical abuse. The child was placed with his maternal grandparents on an emergency basis.

¶ 3    Mother appeared virtually from Kansas at the initial shelter hearing. She testified that she and the child lived in Kansas and were visiting Colorado when the child was removed. But she also testified that she lived at her parents' Colorado address and that she was planning to move to Florida. The juvenile court granted temporary legal custody to the Department, and the child remained with maternal grandparents.

1

¶ 4    In February 2023, mother asserted that the Colorado court did not have subject matter jurisdiction under the Uniform Child-custody Jurisdiction and Enforcement Act (UCCJEA) because she and the child had moved to Kansas more than a year before this case commenced, which made Kansas the child's home state. Three months later, a district court magistrate held an evidentiary hearing regarding jurisdiction. At the end of the hearing, the magistrate called a judge from the Sedgwick County, Kansas court. After informing the Kansas court that Kansas was "likely" the child's home state when the petition in this case was filed, the magistrate asked what the Kansas court's position was regarding the appropriate jurisdiction under the UCCJEA. The Kansas court stated that it did not "believe it would make sense for Kansas to exercise jurisdiction" and that "Kansas would like to cede jurisdiction over this matter to Colorado." The magistrate then found that the Kansas court's decision to decline jurisdiction was "dispositive" and determined that Colorado had jurisdiction over this case under the UCCJEA. Mother petitioned for judicial review of the magistrate's order, and the juvenile court judge adopted it,

agreeing that "because Kansas ceded its jurisdiction, jurisdiction rest[ed] with Colorado."

¶ 5     After a jury trial, the juvenile court adjudicated the child dependent or neglected. The court later entered a dispositional order adopting a treatment plan for mother.

¶ 6     Mother appealed, arguing that the juvenile court failed to comply with requirements of the Indian Child Welfare Act (ICWA) and lacked subject matter jurisdiction under the UCCJEA when it adjudicated the child and entered the dispositional order. We granted the parties' joint request for a limited remand to allow the court to address ICWA compliance. Thereafter, mother withdrew her appellate argument regarding ICWA, stating that the "supplemental record makes clear that the [juvenile] court has now complied with the notice and inquiry requirements of ICWA."

## II.     Discussion

¶ 7     Because mother withdrew her ICWA argument, her sole contention on appeal is that the juvenile court erred by finding that Colorado had jurisdiction under the UCCJEA. She asserts that even if Colorado had temporary emergency jurisdiction when this case commenced, it lost such jurisdiction because of the lengthy

delay in reaching adjudication had removed the emergency nature of the situation and Colorado did not have non-emergency jurisdiction because Kansas was the child's home state.

¶ 8 We disagree with all parties' jurisdictional analyses for the reasons explained below. But we ultimately conclude that the juvenile court had jurisdiction under the UCCJEA when it adjudicated the child and entered the initial dispositional order.

### A. Standard of Review and Legal Authority

¶ 9 "Whether a trial court has jurisdiction over a child custody proceeding presents a question of law, which we review de novo." *People in Interest of S.A.G.*, 2021 CO 38, ¶ 21 (quoting *Brandt v. Brandt*, 2012 CO 3, ¶ 18). But we may not disturb any factual findings upon which the existence of jurisdiction turns unless they are clearly erroneous. *Id.*

¶ 10 The UCCJEA sets out a detailed and comprehensive framework that Colorado courts must use to determine whether they may exercise jurisdiction in child custody matters. *People in Interest of C.L.T.*, 2017 COA 119, ¶ 16. The UCCJEA offers courts two ways to exercise jurisdiction to make an initial child-custody determination — temporary emergency jurisdiction under section

14-13-204, C.R.S. 2024, and non-emergency jurisdiction under section 14-13-201, C.R.S. 2024. *S.A.G.*, ¶¶ 24-26. A Colorado court may exercise temporary emergency jurisdiction to enter an initial child-custody determination if a child is present in Colorado and has been abandoned, or it is necessary in an emergency to protect the child because the child, sibling, or parent of the child, is subjected to or threatened with mistreatment or abuse. § 14-13-204(1). A Colorado court may exercise non-emergency jurisdiction to enter an initial child-custody determination if it successfully navigates one of the four paths to jurisdiction from section 14-13-201(1): (1) home-state jurisdiction; (2) significant-connection jurisdiction; (3) more-appropriate-forum jurisdiction; or (4) last-resort jurisdiction. *S.A.G.*, ¶ 26.

¶ 11    However, if a Colorado court with proper jurisdiction has already entered an initial child-custody determination, then it retains exclusive, continuing jurisdiction to modify that determination until either (a) the Colorado court determines that the child, the child's parents, and any person acting as a parent do not have a significant connection with Colorado and that substantial evidence is no longer available in Colorado concerning

5

the child's care, protection, training, and personal relationships; or (b) the Colorado court or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in Colorado. § 14-13-202(1)(a)-(b), C.R.S. 2024. If a Colorado court that has entered an initial child-custody determination loses exclusive, continuing jurisdiction, then it must find that it has jurisdiction under section 14-13-201 before it may modify its determination or enter further orders regarding the child. § 14-13-202(2).

## B.    Analysis

¶ 12    After the UCCJEA hearing, the magistrate found that when this case commenced, Colorado had temporary emergency jurisdiction to enter orders regarding the child under section 14-13-204. The parties disagree about whether the juvenile court had temporary emergency jurisdiction at that time. But we conclude that the court did not need temporary emergency jurisdiction to act because, prior to the commencement of these proceedings, a Colorado court had already entered an initial child-custody determination, which gave the Colorado court exclusive, continuing jurisdiction under section 14-13-202.

6

¶ 13     Specifically, in October 2019, maternal grandparents opened Fremont County Case No. 19DR168 by filing a petition for allocation of parental responsibilities for the child, and we take judicial notice of the court records and orders from that proceeding. *See Medina v. People*, 2023 CO 46, ¶ 5 n.1 ("A court may take judicial notice of the contents of court records in a related proceeding." (quoting *People v. Sa'ra*, 117 P.3d 51, 56 (Colo. App. 2004))).  In that case, maternal grandparents and mother entered a written stipulation which stated that the Colorado court had jurisdiction to enter a child-custody determination because Colorado was the child's home state at the commencement of those proceedings.  They further agreed that mother would have sole custody of the child, while maternal grandparents would have visitation.  In August 2020, the district court adopted the stipulation as an order of the court.

¶ 14     Regardless of the parties' and juvenile court's erroneous belief that no prior child-custody determination existed at the time these proceedings commenced it is clear that the district court's August 2020 order qualified as an initial child-custody determination under the UCCJEA.  *See* § 14-13-102(3), C.R.S. 2024 (a "child-custody

7

determination" includes any judgment, decree, or order allocating parental responsibilities with respect to a child or providing for visitation, parenting time, or grandparent family time with respect to the child). And at the time these proceedings commenced, no court had determined that Colorado had lost continuing, exclusive jurisdiction under section 14-13-202(1). Therefore, when the petition in this case was filed, Colorado had continuing, exclusive jurisdiction over the child custody issues, and temporary emergency jurisdiction was unnecessary.

¶ 15 Nonetheless, when mother asserted that she and the child had lived in Kansas for the year leading up to these proceedings, the question of whether Colorado had lost its continuing, exclusive jurisdiction arose. As noted above, either the Colorado or Kansas court could have determined that Colorado had lost continuing, exclusive jurisdiction by finding that the child, his parents, and any person acting as his parent no longer resided in Colorado. *See* § 14-13-202(1)(b). But neither court made such a finding. Assuming, without deciding, that Colorado lost continuing, exclusive jurisdiction when mother and the child moved to Kansas, the record establishes that the juvenile court had jurisdiction under

8

the UCCJEA by the time it adjudicated the child and entered the dispositional order.

¶ 16    At the UCCJEA hearing, the parties agreed that Colorado was not the child's home state because the child had not lived in Colorado for at least one hundred eighty-two consecutive days immediately before the filing of the petition.  *See* § 14-13-102(7).  And, although the parties agreed that Kansas was the child's home state when this case commenced, the question of whether the juvenile court had significant-connection, more-appropriate-forum, or last-resort jurisdiction to adjudicate the child turned on whether Kansas still had home-state jurisdiction at the time of adjudication.  *See S.A.G.*, ¶¶ 41-42 (where Arkansas was the child's home state at the time the Colorado proceedings commenced, the Colorado court's ability to enter a termination order turned on whether Arkansas still had home-state jurisdiction at the time of termination, and the court's focus on whether Arkansas was the home state at the commencement of the proceedings was contrary to the plain text of the UCCJEA).

¶ 17    By the time of adjudication, the child had lived with maternal grandparents in Colorado for approximately one year.  Thus, the

question of whether Kansas was still the child's home state at that time turned on whether the child's time in Colorado had been a "period of temporary absence" from the state of Kansas. *See id.* at ¶ 43; *see also* Kan. Stat. Ann. § 23-37,102(8) (2024) ("home state" means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months, including any periods of temporary absence, immediately before the commencement of a child-custody proceeding). Similar to the circumstances in *S.A.G.*, the juvenile court here did not determine whether the child's time in Colorado was a "period of temporary absence," and in turn, whether Kansas was still the child's home state at the time it adjudicated the child and entered the dispositional order. But unlike the circumstances in *S.A.G.*, we do not need to remand this case for the juvenile court to determine if Kansas was still the child's home state at the time of adjudication because, either way, we conclude that the juvenile court had significant-connection jurisdiction when it adjudicated the child and entered the dispositional order.

¶ 18    Under section 14-13-201(1)(b), a Colorado court has jurisdiction to make a child-custody determination when another

10

state does not have home-state jurisdiction or the child's home-state court has declined to exercise jurisdiction, and Colorado meets the requirements for significant-connection jurisdiction under subsections (b)(I) and (b)(II).

¶ 19    First, if we assume, for the sake of argument, that the child's time in Colorado leading up to adjudication was not a "period of temporary absence" from the state of Kansas, then it follows that Kansas was not the child's home state at the time of adjudication. *See* Kan. Stat. Ann. § 23-37,102(8).  If that was the case, then when the court adjudicated the child, the first requirement of section 14-13-201(b) was met because a court of another state did not have home-state jurisdiction.  Further, the juvenile court adopted the magistrate's order in which it found that the child had lived in Colorado from 2017 through 2021; that the child had a significant connection with Colorado; and that substantial evidence related to the child's care, protection, training and personal relationships was available in Colorado.  And those findings are supported by the record.  Thus, the second requirement of section 14-13-201(b) was also met because significant connections and substantial evidence existed in Colorado.  *See* 14-13-201(b)(I)-(II).  Therefore, if Kansas

11

was not still the child's home state at the time of adjudication, the juvenile court had significant-connection jurisdiction to adjudicate the child and enter the dispositional order section 14-13-201(b).

¶ 20 Second, if we assume, for the sake of argument, that child's time in Colorado leading up to adjudication was a "period of temporary absence" from the state of Kansas, then it follows that Kansas was still the child's home state at the time of adjudication. *See* Kan. Stat. Ann. § 23-37,102(8). If that was the case, then the Kansas court would have needed to decline jurisdiction on the ground that Colorado is a more appropriate forum before the Colorado court could exercise significant-connection jurisdiction. *See* § 14-13-201(b). Here, the Kansas court did just that — it declined to exercise jurisdiction and ceded jurisdiction to Colorado. Thus, the first requirement of section 14-13-201(b) was met because the child's home-state court declined jurisdiction. And again, the second requirement of section 14-13-201(b) was met based on the magistrate's findings regarding significant connections and substantial evidence in Colorado. *See* § 14-13-201(b)(I)-(II). Therefore, if Kansas was still the child's home state at the time of adjudication, the juvenile court had significant-connection

12

jurisdiction to adjudicate the child and enter the dispositional order section 14-13-201(b).

¶ 21     We acknowledge mother's argument that the Kansas court declined to exercise jurisdiction without properly considering the inconvenient forum factors. *See* Kan. Stat. Ann. § 23-37,207(b)(1)-(8) (2024) (stating that before determining whether Kansas is an inconvenient forum, a Kansas court must consider all relevant factors, including those listed in subsections (b)(1)-(8)). And we agree that the Kansas court never referred to the inconvenient forum factors when it declined to exercise jurisdiction in this case. But, although the UCCJEA requires a court to "consider" the enumerated factors when determining whether it is an inconvenient forum, it does not require a court to make specific findings regarding each factor. *See* Kan. Stat. Ann. § 23-37,207(b) (a court "shall consider" all relevant factors, including those enumerated in the statute); *see also* § 14-13-207(2), C.R.S. 2024 (a court "shall consider" all relevant factors, including those enumerated in the statute). We will not assume that the Kansas court failed to "consider" the inconvenient forum factors simply because it did not explicitly refer to them in its ruling.

13

¶ 22    Moreover, when a Colorado court contacts an out-of-state court, the out-of-state court can decline jurisdiction in any manner that conveys its intent not to exercise jurisdiction over a child in connection with a child-custody proceeding, even including inaction or refusal to discuss the issue of jurisdiction at all. *S.A.G.*, ¶ 55. Certainly, if a refusal to discuss jurisdiction would have been sufficient to decline jurisdiction, then the Kansas court's express decision to decline jurisdiction was sufficient, regardless of mother's disagreement with its reasoning.

¶ 23    Based on the foregoing, we conclude that the juvenile court had significant-connection jurisdiction pursuant to section 14-13-201(b) when it adjudicated the child and entered the initial dispositional order.

### III.    Disposition

¶ 24    The judgment is affirmed.

CHIEF JUDGE ROMÁN and JUDGE HAWTHORNE concur.